[Civ. No. 5816. Second Appellate District, Division One.—May 8, 1928.]

F. B. SIMPSON et al., Respondents, v. CELESTINE SCHURRA et al., Appellants.

Tanner, Odell & Taft for Appellants.

Clark & Law for Respondents.

SHAW, J., *pro tem.*—This is an action by the purchasers to recover from the vendors damages for breach of a contract for the sale of real property.

The court found that the defendants Schurra refused in bad faith to perform the contract; that the plaintiffs had performed all of the conditions thereof on their part to be performed and suffered certain damages by reason of defendants' nonperformance, and that defendants Meiling did not refuse to perform, but were ready and willing to do so. Judgment was rendered against both defendants Schurra for the amount of the damages so found, and from this judgment they appeal.

From the evidence the following facts appear: The real property involved in this controversy is a rectangular tract of land described as lots 132, 133, 134, 135, 164, 165, 166, and 167 of the East Ocean Park Tract (which tract is a subdivision of a portion of the Rancho La Ballona Dist. Court Case 965), and a vacated railway right of way fifty feet wide running between lots 133 and 166 on one side and lots 134 and 165 on the other. On October 20, 1923, the defendant J. A. W. Meiling owned in severalty the northerly part of this tract of land, and the defendant Celestine Schurra owned the remainder of said tract as the community property of himself and his wife, the defendant Nellie Schurra. On the date last mentioned, the plaintiffs and the defendants Celestine Schurra and J. A. W. Meiling entered into a written agreement as follows:

"Oct. 20/23.

"A temporary agreement between F. B. Simpson, J. G. Guerin, Walt Keeshen the buyers and Celestin Schurra J. A. W. Meiling's concerning the sale of a piece of property known as Rancho La Ballona Dist. Court Case 965 Lots 132, 167, 133, 166, 134, 135, 165, and 164.

"The parties of the second part agrees to sell the above mentioned property for a consideration of $28,000.00 net to us on the following terms of $1000.00 cash which receipt is hereby acknowledged by the party of the second part and the balance of $9000.00 cash to be paid at close of escrow, (The escrow to be put through the Title Guarantee Trust, 5th & Broadway, Los Angeles), together with $18000.00/100 as a first mortgage to run for three years bearing 7% Int. The parties of the second part agrees to give a mortgage with release clauses and will permit the property to be subdivided as the buyers think fit.

"The release clause will contain the following conditions the parties of the second party will release the lots when fifty per cent of the selling value is paid up in full.

"The parties of the second party agree to permit the parties of the first to move the house now on the property at the expense of the parties of the first part. The house to be moved so as to give the party of the second part 72 ft. frontage, the total ground space including one half acre. The frontage to be on Burkshire Ave. The parties of the

second part are released from paying any commission on this deal.

> "F. B. SIMPSON.
> "J. G. GUERIN.
> "WALT KEESHEN.
> "C. SCHURRA.
> "J. A. W. MEILING."

On October 22, 1923, these parties went to the office of the Title Guarantee & Trust Company, and certain escrow instructions were then signed and delivered to said company. In behalf of the purchasers these instructions were signed only by plaintiff Keeshen, although the instructions called for a deed conveying the property to all of the plaintiffs. The instructions were also signed by the defendant J. A. W. Meiling and Celestine Schurra. These instructions were in the usual form of such documents and they differed from the agreement above quoted by excepting from the property to be conveyed the east one-half of lot 165, and by including therein "that portion described as Parcel 2 in T. I. & T. Co. Guar. 619426." We assume, although we have found no evidence to that effect, that the last-mentioned parcel was the right of way above mentioned. Different provisions were also made regarding the mortgage which the purchasers were to execute, and the form of the release clause to be contained therein, the escrow instructions calling for one mortgage securing a note for $7,500 in favor of J. A. W. Meiling on the land owned by him and another mortgage securing a note for $10,500 in favor of defendants Schurra, as joint tenants, on the land owned by Schurra. They also provided that the buyers would take the property subject to certain encumbrances not mentioned in the agreement.

After these escrow instructions were drawn, and while the parties were still in the escrow office, the plaintiff Keeshen wrote, and the defendant Celestine Schurra signed, the following paper:

"Memorandum of Agreement

"On this 22nd day of October, I, Celestine Schurra, do hereby agree to transfer my right and title to the ½ acre of Block 165 excepted from escrow, in exchange for a tract of land out of original acreage sold to Walt Keeshen, John Guerin and F. B. Simpson, which must total ½ acre with

not less than 72 foot frontage on Burkshire Blvd. It being understood that Mr. Schurra's house is to be moved, if necessary, to permit surveyors to subdivide property in such manner as to give largest number of lots without waste of land. This transfer to be executed at close of escrow.

"It will be further understood that acreage accepted by Mr. Schurra must also front new boulevard, to be laid out, as well as Burkshire Blvd.

"Signed this 22nd Day of October 1923.

"By C. SCHURRA."

After considerable negotiation the plaintiffs were unable to agree with defendant C. Schurra as to the location of the land to be retained by him. Schurra refused to perform the agreement as demanded by the plaintiffs, and they refused to accept performance on Schurra's terms, and this suit followed.

The appellants made and deposited in escrow with the Title Guarantee & Trust Company a deed conveying to the plaintiffs the whole of the land above described, except a strip fronting 72 feet on Burkshire Avenue and extending back 302 feet along the northerly side of the proposed new boulevard.

The plaintiffs deposited in the same escrow a mortgage and notes. The mortgage itself was present at the trial, but for some reason it was not introduced in evidence and is not in the record. The only definite showing as to its terms was while plaintiff Simpson was on the stand. The mortgage was shown to him by Mr. Odell, counsel for appellants, on cross-examination, and thereupon the following occurred: "Mr. Odell: Counsel stipulated this morning—I thought he stipulated that this did cover the whole property without any exception. Is that the stipulation that you are willing to enter in? Mr. Law: I stipulated that it covered all the property that I understood they were given. Mr. Odell: In fact, it covers the whole property. I have checked it over. I think it covers the whole property, including everything Schurra should have excepted, which is all the lots. That describes the railroad right of way by metes and bounds. Mr. Law: Really I don't know. I can't tell what it does cover. . . . Mr. Odell: I would like counsel to check it because I say it does cover the whole property without

any exception whatever. . . . Q. You never did sign any other mortgage, did you, than this one? A. Nothing more than I— Mr. Law: We will stipulate, if it will do you any good, that this mortgage will cover all the property. Mr. Odell: Then it is so stipulated.'' From this we understand that there was only one mortgage and that it covered all the property above described, including the railway right of way which was not included in the first contract, and the half of lot 165, which was excepted by the escrow instructions.

 From the foregoing review of the evidence it appears that none of the writings connected with the transaction were signed by the defendant Nellie Schurra; nor was there any proof of an authority, written or otherwise, empowering C. Schurra to act for her. She was the wife of C. Schurra, and the property was their community property. The first point made by appellants is that these two facts alone do not warrant a judgment against her for breach of the contract. Respondents concede that this point is well taken and consent to a reversal of the judgment against Nellie Schurra. We fully agree with appellants and respondents that the judgment against her cannot be supported. The relation of husband and wife does not of itself confer upon the husband any authority to act for his wife. Section 172a of the Civil Code provides that no contract of sale of the community real property is valid against the wife unless she joins with her husband in executing it. A holding that she is liable on such a contract which she did not execute at all would directly contravene this section and also section 1624 of the Civil Code, which requires such a contract to be in writing subscribed by the party to be charged.

 Appellants contend that the plaintiffs are not entitled to sue for a breach of the contract, because the plaintiffs did not perform the contract on their part, and that the finding in plaintiffs' favor on this issue is not supported by the evidence. One who sues another for breach of a contract must show that he has performed all conditions of the contract on his part which are precedent to performance by the defendant and that he is able and has offered to perform all concurrent conditions on his part, except when he

is excused from such performance. (Civ. Code, secs. 1439 and 1440; 6 Cal. Jur. 480.) Before applying this rule it is necessary to ascertain what obligations are imposed on the plaintiffs by the contract, and this leads us to the inquiry: What is the contract between the parties in this case? The evidence discloses that three written instruments were signed by some or all of the parties, and the plaintiffs' claim is that these are not two or three separate agreements but one agreement, and that from them all a definite written agreement appears for the sale of the property described in the complaint on the terms set forth therein. The rule is well established that "when several papers concerning one subject matter are separately executed by the same parties, all are to be construed together as one contract. The intention of the parties is to be gathered from all the instruments, taken together, and the recitals in each may be explained or corrected by reference to any other." (6 Cal. Jur. 298; Civ. Code, sec. 1642.) Here, however, no two of the papers were signed by the same parties, and hence the application of this rule to them may be doubted.

On examining the instruments in question we see that the second, the escrow instructions, if effective, must have superseded the first, which was, in its own words, "a temporary agreement"; for the escrow instructions covered the same ground and made different provisions for nearly all parts of the agreement except the parties and the price. It further appears, however, that while the same three purchasers were named in the escrow instructions as in the first agreement, only one of them signed the instructions. The question at once arises whether the want of the signatures of the other two purchasers prevented the instructions from becoming effective. This question we need not decide, because the papers tendered by plaintiffs as performance did not satisfy either of the instruments in question. Under either of them the execution of the mortgage or mortgages by the plaintiffs must be regarded as a condition concurrent with the conveyance of the land by the defendants, and the plaintiffs must therefore have performed or offered to perform it in order to recover in this action. They make no contention that they were excused from doing so, and hence we give no consideration to that as a possibility. As we

have already seen, the mortgage which they tendered in performance covered the vacated railway right of way, which was not described in the first agreement, and hence their tender was not insufficient under that agreement. They tendered only one mortgage instead of two as provided in the escrow instructions, and it covered the east half of lot 165 which was excepted from those instructions, and the tender therefore failed as a compliance with the instructions.

The third writing relates and refers only to the escrow instructions. It does not purport to be a modification of the agreement set forth in the instructions, but is merely an attempt to confer on the plaintiffs, who did not sign it and hence cannot be bound by it, an option to require an exchange of the properties therein referred to. It appears to be fatally uncertain in its description of the property to be received by Schurra, under the rule hereinafter stated on that point. However it is regarded, it does not help plaintiffs' tender as an offer of performance under the escrow instructions. Since the plaintiffs made no other tender than that which we have already considered and found insufficient, the finding in their favor on the issue of performance is without support in the evidence. The error in this finding necessitates a reversal of the judgment as to both appellants.

■ Appellants in their answer set up a counterclaim against the plaintiffs for damages for breach of the same contract on which plaintiffs sued and contend on this appeal that they should have had judgment on the counterclaim. In view of the possibility of a new trial this contention should be disposed of. In order to recover damages for such a breach appellants also must show that they performed or offered to perform their obligations under the agreement. This they did not do. The deed tendered by them in performance excepted a considerable parcel of land which was covered by the first agreement and by the escrow instructions. They claim that this exception was authorized by the concluding paragraph of the first agreement, which provides for the moving of a house on the land. The intent to except a part of the land described in the agreement from the conveyance to be made is not clearly expressed in the language used; but if such an intent can be found therein,

the provision is uncertain and incapable of enforcement for want of a definite description of the land excepted. The only matters of description stated in connection with the supposed exception are that the land excepted shall have a total ground space of one-half acre, and a frontage of 72 feet on Burkshire Avenue. There is a map in evidence which shows that Burkshire Avenue was an existing street when this agreement was made, and that the land described had a frontage thereon of about 464 feet. The 72 foot frontage mentioned in the supposed exception could, so far as the agreement provides, be located anywhere on this 464 feet. The fact that there was a house on the property does not identify the land excepted because of the provision that the house is to be moved. This is an uncertainty which cannot be removed by parol evidence. "The contract or memorandum in writing must so describe the property which is contracted for that it can be identified with reasonable certainty. It is insufficient to describe it by quantity alone, or by a quantity to be taken out of a larger tract without indicating out of what part it is to be taken, or giving to one party the right to select such tract, or by giving only the starting point and one side." (39 Cyc. 1223, 1224.) "Parol evidence cannot be heard to furnish a description. The only purpose for which such evidence can be heard is to apply the description given to the subject matter. . . . It is not sufficient to allege that, by the imperfect description given in the contract, the parties intended to convey certain property." (*Marriner* v. *Dennison*, 78 Cal. 202–208 [20 Pac. 386, 389].) "An agreement for the sale of real property must not only be in writing and subscribed by the party to be charged, but that writing must also contain such a description of the property agreed to be sold, either in terms or by reference, that it can be ascertained without resort to parol evidence. Parol evidence may be resorted to for the purpose of identifying the description contained in the writing with its location upon the ground, but not for the purpose of ascertaining and locating the land about which the parties negotiated and supplying a description thereof which they have omitted from the writing. . . . The statute of frauds was originally enacted 'for the prevention of frauds and perjuries,' and

an agreement for the sale of land is required to be in writing in order that this purpose may be accomplished. The whole object of the statute would be frustrated if any substantive portion of the agreement could be established by parol evidence. A description of the land intended to be conveyed is one of the most essential parts of the agreement, and must be contained in the writing.'' (*Craig* v. *Zelian*, 137 Cal. 105 [69 Pac. 853].) ▮ This uncertainty in the exception does not void the contract as a whole. The exception only fails, leaving the contract to stand without the exception. (*Lange* v. *Waters*, 156 Cal. 142 [19 Ann. Cas. 1207, 103 Pac. 889].)

The judgment appealed from is reversed.

Houser, Acting P. J., and York, J., concurred.