[Civ. No. 9099. First Appellate District, Division Two.—September 25, 1933.]

NINETEENTH REALTY COMPANY (a Corporation), Respondent, v. M. I. DIGGS et al., Appellants.

Ira Abraham and Keyes & Erskine for Appellants.

Robinson, Price & MacDonald for Respondent.

NOURSE, P. J.—The plaintiff sued in unlawful detainer as purchaser at a sale under a trust deed to recover possession of certain portions of real property held by the defendants. The cause was tried by the court and judgment was entered for the plaintiff for possession and damages. Four of the defendants have appealed upon the judgment-roll and a bill of exceptions.

On December 1, 1924, Lake Drive Corporation, as owner of the real property in suit, executed a trust deed upon the property to secure a bond issue in the sum of $350,000. The defendants George G. Jamieson and Maury I. Diggs were then respectively the president and secretary of the corporation. The purpose of the bond issue was to finance the construction upon the real property of an apartment building containing twenty "community" apartments. Certain contracts were executed by the corporation for the sale or lease of these apartments, all of which were terminated on May 28, 1927. On that date new contracts were executed, one to Diggs covering apartment number 19 and one to Jamieson covering apartment number 20. The corporation then assigned to the trustee as further security under the trust deed all its interest as vendor under these contracts. These contracts were in accordance with a standard form theretofore adopted to cover all apartments in the building. Among other things they provided for installment payments to be made on account of the purchase of a ninety-nine year lease to become operative January 1, 1940, and that the purchasers' right of occupancy in the meantime should be under the terms of the contracts. They also provided that they were subject to the terms of the trust deed which in

this respect provided that as long as the corporation was not in default upon the bonds issued it should be entitled to receive and retain forty-five per cent of the contract payments and that if and as long as the corporation shall be in default the trustee should hold such ' sale and lease funds as a part of the mortgaged property and· should disburse the same for the payment of expenses, fees, principal and interest due under the terms of the trust deed. Default under the bond issue occurred on December 1, 1930, and thereafter the corporation purported to execute and deliver to the defendants Diggs and Jamieson leases on apartments numbers 19 and 20 for a period of ninety-nine years commencing January 1, 1940. These leases were dated January 20, 1931, and were acknowledged October 19, 1931. The purchase price of these ninety-nine year leases was not paid to the trustee as required by the contracts of sale and by the deed of trust but the defendants claimed that it was paid to the corporation in the form of a set-off of some indebtedness of the corporation to defendants Diggs and Jamieson.

■ At the outset we cannot understand how appellants can claim right of possession under a lease which, by its express terms, does not become operative until January 1, 1940. The point is suggested by respondent and appellants' only reply is that the only evidence as to the terms of the lease comes from the document which was marked for identification and which was not received in evidence. The terms of the ninety-nine year leases are not disputed and are frequently referred to throughout the briefs. As they are the only basis upon which the appellants may claim right of possession it would seem to follow that it was incumbent upon them to prove that right. Respondent made out a complete case as purchaser under the deed of trust under which it took the title in fee to the entire property. If the evidence is insufficient to show the terms of the purported lease and thus a *present* right of possession the appellants have no standing on this appeal.

■ However, the primary question involved is the interpretation of the deed of trust in so far as it affects the rights of these appellants. This deed conveyed to the trustee the entire fee of the real property without limitation, reservation or exception, and without any provision for a

partial release of any portion of the real property or of any portion or unit of the apartment building which was to be erected thereon. Following the description of the real property which was thus conveyed to the trustee the deed contains five paragraphs, each commencing with the word "also" and each conveying to the trustee some additional interest in the property theretofore described or in the buildings and improvements which were thereafter to be erected thereon. The second and third of these paragraphs read:

"Also, all contracts, either written or oral, now or hereafter executed, for the sale of any portions of the above described land or of the building to be erected thereon as provided in article III hereof, as apartments or otherwise, and all payments due thereunder, *except* that if and so long as the company be not in default hereunder, and subject to the provisions of section 5 of article IV of this indenture, it shall be entitled to receive and retain free from the lien of this indenture all payments not in excess of forty-five (45) per cent of each contract price when and as made under said contracts.

"Also, all leases, either written or oral, now or hereafter executed (except ninety-nine year leases), of said land or building and rentals and payments accruing thereunder."

Following these paragraphs there appears the following: "It is hereby expressly provided that any rights of purchasers or tenants created by contracts of sale or leases, whether executed prior or subsequent to the recording of this indenture, shall be at all times subordinate to the lien hereof."

Section two of article four of the indenture reads: "The company expressly covenants to assign to and deposit with the trustee as further security for the performance of all the terms and conditions of said bonds and of this indenture, contemporaneously herewith if already executed or within ten days after execution if executed subsequently, all leases, except ninety-nine (99) year leases, of all or any portions of the aforesaid mortgaged premises or the building to be erected thereon, and the company further covenants that all the rentals under said leases shall be paid directly by the tenants therein named to the trustee."

It is the contention of the appellants that by reason of the quoted provisions of the deed of trust all ninety-nine year leases executed by the lessor are withdrawn as security under the bond issue. The trial court found adversely to appellants on this point after a trial particularly addressed to that issue. We are in full accord with the interpretation given by the trial court. The purpose and intention of the parties in the execution of the deed of trust cannot be in doubt. The owner of the realty for the purpose of obtaining funds to construct a building thereon conveyed to the trustee as security the entire fee without limitation, reservation or exception. This, of course, included all interest in the building and improvements thereafter erected upon the premises. The ''also'' clauses in the deed were all added as additional collateral and were in no sense an exception to or limitation upon the conveyance of the fee. These clauses required the assignment to the trustee of all contracts of sale of any portion of the building and of all leases, written or oral (except ninety-nine year leases), covering the land or building ''and rentals and payments accruing thereunder''. The purpose of these assignments was to enable the trustee to take fifty-five per cent of the rentals and payments accruing under such leases as long as the corporation was not in default and to use such moneys in the payment of interest and principal of the bonds. Likewise, if the corporation should be in default, the trustee was authorized to retain one hundred per cent of these funds to be used for the same purposes. Under the plan of financing the construction and sale of the apartments the corporation stipulated that where a lessee had completed payments of the full purchase price of his apartment a lease was to be given him to run for a period of ninety-nine years from January 1, 1940. The purchase price having been theretofore fully paid for the apartment, no rentals or payments would accrue under a ninety-nine year lease and hence there would be no purpose of an assignment of such a lease to the trustee. But the exception of such leases from the requirement of assignment to the trustee does not except the property covered thereby from the security of the trust. The purpose and intention of the parties seems so clear from the language used in the document that there should be no room for the application of the rules of construction of instruments of

this character. But if there be any doubt as to the language used, that construction must be adopted which is most favorable to the bondholders—the one which will not impair their security. It is not within reason to say that the parties contemplated that the trustor and lessor herein might execute a ninety-nine year lease ''of said land or building'' or of any portion or portions thereof free from rental or other charges and thus wholly destroy the security of the trust deed. But if appellants' argument is sound that this course could be followed as to two of the twenty apartments constructed it would follow that it could be done as to all twenty apartments and to the land and building as well.

Furthermore, these ninety-nine year leases are not described or explained in any portion of the deed. It does not appear what portion of the estate they may cover, when or under what conditions they may be made, or when they may commence to run. If the language of the deed was intended to except them from the estate conveyed to the trustee then the exception is void for uncertainty and the deed stands without the exception. (*Lange* v. *Waters,* 156 Cal. 142, 146 [103 Pac. 889, 19 Ann. Cas. 1207]; *Simpson* v. *Schurra,* 91 Cal. App. 640, 648 [267 Pac. 384].)

Appellants complain of the rulings of the trial court refusing admission into evidence of their proposed exhibits designated E to I for identification. Exhibit E was a deed of grant from Lake Drive Corporation to a corporation known as 244 Lakeside Drive. The deed was dated September 12, 1931, and was expressly made subject to the trust indenture. None of the parties claimed any rights under it; it did not affect the title or the right of possession of any party, and had no bearing on the case.

Exhibit F was a letter from the Lake Drive Corporation to the trustee dated October 10, 1931, notifying the trustee that the Diggs contract had been paid in full in *January,* 1931. The purpose of this offer is not clear. By the terms of the trust indenture and by the terms of the Diggs contract assigned to the trustee all payments under the contract were required to be made to the trustee. Diggs was an officer of the corporation; the corporation was in default; he knew this and knew his contract had been assigned to the trustee. But a debtor, with full knowledge

of the assignment, cannot contrive with the assignor to defraud the assignee by a purported settlement with the assignor. (5 C. J., p. 960; 2 R. C. L., p. 632.) The proposed exhibit merely discloses an attempt on the part of the corporation and the appellants to defeat the beneficiaries under the trust and was of no evidentiary value.

Exhibits G and H were the purported ninety-nine year leases from the corporation to Diggs and Jamieson. They were properly rejected because, being subject and subordinate to the deed of trust, any rights which they might have given to the appellants were destroyed by the trustee's sale. For the same reason exhibit I was properly excluded. This was an assignment of the Jamieson lease to his wife.

At the conclusion of the trial and following argument of counsel an offer of further proof was made by counsel for appellants to the effect that when it was found that the Lake Drive Corporation was having difficulty in meeting the interest and principal on the bonds the appellants made a portion of these payments in an amount which was in excess of the amounts which they owed the corporation upon their contracts of purchase; that in January, 1931, they represented these facts to the corporation and that thereupon the corporation adopted a resolution reciting that their contracts had been fully paid up and that they were entitled to receive ninety-nine year leases for their respective apartments; that such leases were executed and that they now claim to hold under them; that in 1930 default had been made upon the principal and interest of the bonds and that on September 12, 1931, a deed was delivered from the Lake Drive Corporation to a nonprofit corporation comprised of the fourteen contract holders and known as 244 Lakeside Drive; that thereafter the members of this corporation purchased a sufficient number of the outstanding bonds to proceed with foreclosure; that such proceedings were had; that the interests of the 244 Lakeside Drive Corporation were transferred to the respondent herein, which corporation became the purchaser at the trustee's sale. Proof was also offered that the exception heretofore noted in the deed of trust relating to ninety-nine year leases was inserted with the consent of the state commissioner of corporations. This offer was followed with the tender of exhibits E to I which have heretofore been discussed. Objec-

tion was made to the introduction in evidence of the matters outlined in the offer of proof and to the introduction in evidence of exhibits E to I for identification. This objection was on the general ground that such evidence was incompetent, irrelevant and immaterial and also upon the ground that there were no pleadings to support the introduction or to permit the introduction of such evidence. Thereupon briefs were requested from both sides on this objection and when the objection was thereafter sustained the appellants asked and obtained permission to amend their answers. Such amendments were filed and the respondent demurred thereto and moved to strike the amendments from the record. The trial court granted the motion to strike and sustained the demurrer. The offer of proof relating to the purported settlement of the obligations of the corporation to the appellants was properly rejected. The appellants were seeking to take advantage of the terms of section 13 of their contract of sale which was received as defendants' exhibit D and which authorized the vendee of any of the apartments in the event that the vendor was in default to pay the full purchase price to the trustee, whereupon the vendee should be entitled to delivery of a ninety-nine year lease. It will be noted that appellants did not offer to prove that they complied with the all-important condition of this contract—payment of the balance due to the trustee. In fact the offer discloses that no money changed hands but that after the vendor was in default and after the contracts had been assigned to the trustee the officers of the corporation purported to discharge their obligations to the trustee by means of a settlement with the corporation of a claim which they held against the corporation. But aside from the technicalities presented, if we are correct in our holding that the ninety-nine year leases were subordinate to the trust indenture, the only purpose of the offer of proof would be to show that the appellants held such leases. There is nothing in the offer which would have constituted a defense to the action and hence the objection was properly sustained.

The amended answers which were thereafter filed did not conform with the proof made at the trial. They pleaded a separate and special defense upon which there was no evidence. They thus went beyond the permission granted

by the trial court and were properly stricken from the files.

■ Appellants argue that the instrument of security was in fact a mortgage and should have been foreclosed under the provisions of section 726 of the Code of Civil Procedure. The point is answered in *La Arcada Co.* v. *Bank of America,* 120 Cal. App. 397, 401, 402 [7 Pac. (2d) 1115], where a similar instrument was held to be a trust deed and as such subject to foreclosure and sale under section 2924 of the Civil Code. (See, also, *McDonald* v. *Smoke Creek Livestock Co.,* 209 Cal. 231, 236 [286 Pac. 693].)

■ Appellants contend that this is not a proper proceeding in unlawful detainer because it requires a trial of questions of title. The proceeding was brought under the authority of section 1161a of the Code of Civil Procedure. This section was added to the code in 1929. Subdivision 3 permits the action "where the property has been duly sold in accordance with section 2924 of the Civil Code, under a power of sale contained in a deed of trust . . . and the title under the sale has been duly perfected". The section is a legislative recognition of the departure from the early common-law rule of unlawful detainer which limited summary proceedings thereunder to the strict relation of landlord and tenant. An accepted doctrine in the operation of that rule was that a tenant was estopped from denying the title of his landlord and hence that the question of title was not triable in such a proceeding. As the right to sue was extended to the successor in interest of the landlord (*Plummer* v. *Agoure,* 20 Cal. App. 319 [128 Pac. 1014]), the courts recognized the necessity of permitting the plaintiff to prove that he had acquired the landlord's title. This subject was before us recently in *Hewitt* v. *Justice's Court of Brooklyn Township,* 131 Cal. App. 439 [21 Pac. (2d) 641], a case involving the jurisdiction of a justice's court to entertain a proceeding under the third subdivision of section 1161a. The point was there made that the title to real property became involved whenever the plaintiff started to prove that "the title under the sale has been duly perfected". In this connection this court said (p. 509), "In other jurisdictions the right to maintain an unlawful detainer action has long been given to a purchaser under a mortgage or deed of trust against the mortgagor or maker

of the deed of trust, despite the fact that the purchaser must prove his acquisition of the title by the purchase. (*Gage* v. *Sanborn*, 106 Mich. 269 [64 N. W. 32]; *Peters* v. *Balke*, 170 Ill. 304 [48 N. E. 1012].) It is clear, of course, that questions of title cannot generally be litigated in an unlawful detainer action. But to the limited extent of proving deraignment of title in the manner expressly provided for in the unlawful detainer statutes themselves the question of title not only may, but must, be tried in such actions if the provisions of the statutes extending the remedy beyond the cases where the conventional relation of landlord and tenant exists are not to be judicially nullified.'' (And see *American Nat. Bank* v. *Johnson*, 124 Cal. App. (Supp.) 783 [11 Pac. (2d) 916], and *Berkeley Guar. B. & L. Assn.* v. *Cunnyngham*, 218 Cal. 714 [24 Pac. (2d) 782].)

In the instant case there is no constitutional nor jurisdictional question involved. This remedy is purely statutory and, if the determination of the question of title to realty becomes necessary, there is no reason why the legislature could not provide for the trial of that issue in a proceeding of this character. To what extent the inquiries into the title may run we need not decide. It is sufficient to say that if, in the proof of a ''perfected'' title as purchaser under a deed of trust the validity of the deed or of the sale under it are put in issue by defendants' denials, the plaintiff cannot be denied the right to complete his proof unless the courts are prepared to nullify the remedy granted by the code section.

The judgment is affirmed.

Spence, J., and Dooling, J., *pro tem.*, concurred.