[Civ. No. 5659. Third Appellate District.—May 7, 1937.]

FRED C. MASSETTI, a Minor, etc., Respondent, v. MADERA CANAL & IRRIGATION COMPANY (a Corporation), Appellant.

David E. Peckinpah and L. N. Barber for Appellant.

Conley, Conley & Conley for Respondent.

THOMPSON, Acting P. J.—In a suit for damages resulting from the destruction of a tomato crop on account of the flooding of water which was negligently permitted to escape from an irrigation canal the plaintiff secured a judgment which was rendered pursuant to the verdict of a jury for the sum of $1,083.33 against the Madera Canal & Irrigation Company. From that judgment the irrigation company has appealed.

It is contended the judgment is not supported by the evidence for the reason that appellant claims title to an easement to flood the land upon which the plaintiff's tomato crop was planted and because it does not appear that the crop was destroyed by means of water which overflowed from the canal, rather than that which percolated through the walls of the canal. It is also asserted the court erred in receiving evidence which was incompetent and prejudicial.

For many years the Madera Canal & Irrigation Company has been the owner and entitled to divert from the Fresno River at a point about two miles easterly of the city of

Madera 200 second-feet of water. During that period of time it owned and operated a system of canals to convey the water to agricultural lands southerly of the city of Madera for sale and public use for irrigation purposes. The appellant maintains a dam in the Fresno River just below the point where the main canal exists. A short distance from that place the canal divides into two main branches, one of which extends south for several miles and thence westerly, with numerous lateral branches. This easterly and southerly branch of the canal is not involved in this litigation. The westerly branch of the main canal extends through the city of Madera and thence southwesterly a distance of several miles. It also contains a large number of lateral branches. These main canals were designed to each carry a maximum flow of approximately 100 second-feet of water.

In November, 1934, the plaintiff leased two acres of land just southwest of Madera in the south half of the southwest quarter of the northwest quarter of section 25, township 11 south, range 17 east, in Madera County. This two-acre tract of land occupies a slight depression in close proximity to the north main branch of the appellant's canal. In the spring of 1935, the plaintiff cultivated his land and transplanted therein some 18,000 tomato vines to be raised for market. These vines were properly cared for and were in a healthy condition of development until they were drowned out and destroyed by the overflowing of water from the appellant's canal. This suit for damages for loss of the tomato crop was then commenced against the appellant for negligently permitting the water to overflow the banks of the canal and to seep therefrom so as to flood and destroy the respondent's crop. The cause was tried with a jury, which returned a verdict in favor of the plaintiff. A judgment for damages was rendered against the irrigation company. A motion for judgment notwithstanding the verdict was presented and denied. A motion for new trial was also denied. From that judgment the Madera Canal & Irrigation Company has appealed.

■ We are of the opinion the judgment is adequately supported by the evidence. There is a conflict of testimony, but the substantial evidence exists in support of the judgment. The plaintiff testified that he had lived in the vicinity of his two-acre tract of land for nineteen years and he had

never before seen it flooded. The soil of the tomato patch was a sandy adobe soil. He said that he successfully raised a crop of tomatoes on that same land in 1934, and that he previously had no trouble from an excess of water. Mr. Emmert, the manager of the Madera Canal & Irrigation Company, told the plaintiff's brother in 1934 that they need not fear a flooding of the tomato patch since the company had installed a drain pipe to convey overflow water back into the canal. Early in the spring of 1935 the plaintiff planted some 18,000 tomato vines, which he carefully cultivated and which developed in fine condition until they were destroyed in May. The capacity of the canal was approximately 100 second-feet of water. The appellant's engineer reported that in 1935 the canal was carrying 113 second-feet of water. The plaintiff testified that the water in the canal was the highest in 1935 that he had ever seen it. The canal was obstructed with grass, weeds and debris. Mr. Morrison, a witness who was called in behalf of the plaintiff, testified that:

"I observed the canal to be badly grown up with weeds and rushes and the flow obstructed for that reason and on one occasion I observed a stump under a bridge east of the town, large stump that obstructed the flow."

May 3d the plaintiff observed "water coming over the banks" and through gopher holes. He examined the drain pipe and found that it was obstructed so that no water flowed through it. He said in that regard, "I found none flowing out of it". He plugged the gopher holes and dug a lateral ditch to carry off the overflow water, but was unable to prevent the flooding of his land. On that day he called the manager of the irrigation company and informed him of the defective condition of the canal banks and the danger to his tomato crop. He said:

"I told him we would have to do something about the tomatoes or we would lose them all and he asked for suggestions and I told him to lower the ditch and he said he couldn't, he would lose money if he closed the water."

The manager promised to send out a team and men that day to repair the walls of the canal, but failed to do so. For several days the plaintiff worked to stop the overflow of water and the flooding of his tomato patch, by digging a ditch and attempting to close the apertures over which the water flowed from the canal, but failed in his attempt. He

repeatedly asked the agents of appellant to stop the flow. While it appears that some work was done on the canal by the irrigation company, it was inadequate and by May 7th the plaintiff's land was completely flooded and the crop was entirely destroyed. Ten acres of the flat was covered with water. It remained in that flooded condition until June.

There is substantial evidence to the effect that the plaintiff's land was flooded and his crop destroyed by reason of the negligent carrying of a quantity of water in excess of the maximum capacity of the canal, and because of the obstruction in the drain pipe which caused overflowing of the banks of the stream. The brother of the plaintiff testified that he saw water flowing over the bank in a stream 50 or 60 feet in width, and that someone sought to close an aperture by merely placing an old mattress in it. There is some evidence that the damage to the crop was not caused by seepage of water through the banks of the canal. This evidence may be unsatisfactory to establish that fact. But there is ample proof that a large quantity of water did overflow the banks and flood the field. It satisfactorily appears that the flooding of the field occurred largely because of the overflowing of the banks and the obstruction of the drain pipe.

Evidence was adduced over the objections of the appellant that the Union Paving Company was engaged in April in constructing a highway bridge at Madera across the canal in question. Mr. Morrison, the superintendent of that construction company testified that he interviewed the manager of the irrigation company on several occasions, attempting to persuade him to reduce the quantity of water flowing in the canal long enough to enable them to construct the abutments for the bridge. The last conversation regarding that subject was in April. The irrigation company refused to reduce the quantity of water in the canal unless they were paid $100 a day for the time during which the water was reduced. The construction company refused to pay that amount. Morrison said that the construction company then attempted to drive down sheeting at the point where the abutments were to be placed but that,

"At that time, shortly thereafter the water began to rise and continually rose to its approximate peak, it was as full as it could get, and stayed there until the completion of

the pouring of the east deck, the completion of the pouring against the siding."

The sheeting was washed out by the high flood. Morrison complained to the irrigation company of carrying an excessive flow of water in the canal. He said that he told Mr. Emmert, "Your own engineer has given me a report it was carrying 113 second feet."

The respondent contends that the irrigation company increased the flow in the canal to force the construction company to pay its demand of $100 a day during the time the water was reduced so as to enable it to construct the abutments of the bridge. It is claimed this was the reason for carrying an excess quantity of water in the canal which caused it to overflow the banks and destroy the tomato crop. There may be little merit in that contention, but the evidence is susceptible of that inference, and we are unable to say it was not competent for the consideration of the jury.

Taken as a whole, the evidence appears to be adequate to support the implied findings of the jury to the effect that the destruction of plaintiff's crop of tomatoes was the result of appellant's negligence in carrying an excess quantity of water in the canal and permitting it to overflow and flood the land so as to destroy the crop. The judgment is therefore sufficiently supported by the evidence.

■ The rule is well established in California that the owners of canals and ditches which are maintained for the purpose of conveying water for irrigation purposes either for private use or for sale to the public are liable for damages to the crops or property of adjacent owners resulting from the overflow or leakage therefrom on account of negligence on the part of the owners thereof in the construction, maintenance or operation of the system. (*Ketcham* v. *Modesto Irr. Dist.*, 135 Cal. App. 180 [26 Pac. (2d) 876]; *Truman* v. *Sutter-Butte Canal Co.*, 76 Cal. App. 293 [244 Pac. 923]; *Nola* v. *Orlando,* 119 Cal. App. 518 [6 Pac. (2d) 984]; 26 Cal. Jur. 152, sec. 356; 67 C. J. 1423, sec. 1095; 15 R. C. L. 486, sec. 38; 3 Kinney on Irrigation and Water Rights, 2d ed., 3085, sec. 1674.)

■ It is immaterial that the evidence may also show that a quantity of water percolated through the banks of the canal and contributed to the quantity which overflowed its banks so as to flood the plaintiff's field and destroy his crop.

It has been definitely held that an adjacent property owner is entitled to recover damages to his crop which is negligently caused by permitting water to seep through the banks of a canal which is maintained for the purpose of distributing water for public use. This doctrine is based on the provisions of article I, section 14 of the Constitution. In denying a hearing in the case of *Tormey* v. *Anderson-Cottonwood Irr. Dist.*, 53 Cal. App. 559 [200 Pac. 814], the Supreme Court said at page 568 thereof:

"In so far as the opinion of the District Court of Appeal appears to indicate that the plaintiffs cannot recover damages for the injury to their land unless it appears that the flooding thereof which caused the injury was the proximate result of the negligence of the defendant in the construction and maintenance of its canal, we disapprove the same. The canal is constructed for public purposes and to serve the purpose of distribution of water to public use. Apparently the damage to the plaintiffs is caused directly by seepage of water carried in said canal through the intervening soil onto the adjoining land of the plaintiffs. In such cases the plaintiff is secured a right to damages by the constitutional provision that private property shall not be damaged for public use. (Art. I, sec. 14.) In such cases the care that may be taken in the construction of the public improvement which causes the damage is wholly immaterial to the right of the plaintiff to recover damage, if the improvement causes it. This was expressly decided in *Reardon* v. *San Francisco*, 66 Cal. 492, 505 [56 Am. Rep. 109, 6 Pac. 317], and *Eachus* v. *Los Angeles* (*Consolidated Elec. Ry. Co.*), 103 Cal. 614 [42 Am. St. Rep. 149, 37 Pac. 750]."

We are of the opinion the judgment and the implied finding of the jury are amply supported by the evidence, to the effect that the appellant was not the owner of an easement which was granted to its predecessor of title, or which was acquired by prescription, to flood the land of plaintiff upon which his tomato crop was planted. At least there is a conflict of evidence with respect to that issue and we may therefore not disturb the judgment on appeal in that regard.

The appellant contends that it is the owner of an easement authorizing it to flood the plaintiff's land in question by virtue of a deed of conveyance from Thomas E.

Hughes, who was a member of the Fresno Dam & Canal Company, from which the appellant derived title. The deed from Hughes to Goode and Noble was received in evidence. It was executed June 2, 1890, and contained the following clause:

"Reserving a strip of land thirty (30) feet wide from the west and south sides of said land for purposes of a public highway. *Also reserving from said land for reservoir purposes all land which at high water is covered with water.*"

It is asserted that the preceding reservation of land for "reservoir purposes" created an easement in favor of the appellant under the provisions of section 1104 of the Civil Code estopping the plaintiff from claiming damages for the loss of his crop from flooding the land. Section 1104 provides:

"A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed."

In support of the appellant's asserted easement to flood the land of plaintiff it cites the following authorities: *Vargas* v. *Maderos,* 191 Cal. 1 [214 Pac. 849], *Conner* v. *Lowery,* 94 Cal. App. 323 [271 Pac. 118], and *Ricioli* v. *Lynch,* 65 Cal. App. 53 [223 Pac. 88].

The character of the purported right of the appellant to "all land which at high water is covered with water" for "reservoir purposes" is a mere license as distinguished from an easement. (2 Tiffany on Real Property, 2d ed., 1201, sec. 349.) In defining the term license as distinguished from an easement, the author of the text last cited says, at page 1203:

"A license may be to do any of an almost infinite variety of things on another's land. Thus, one may have a license *to flood land,* to erect buildings or other structures thereon, to pass on the land, to maintain a ditch, to cut timber, . . . "

A privilege similar to the one relied upon by the appellant in this case is termed in the case of *Lange* v. *Waters,* 156 Cal. 142 [103 Pac. 889, 19 Ann. Cas. 1207], as an *exception* to the grant, as distinguished from a reservation. (4 Thomp-

son on Real Property, 367, sec. 3257.) In the case last cited it is said that such an exception reserved by the terms of a deed of conveyance "is to be construed strictly against the grantor".

In the present case we are of the opinion the language of the deed relied upon by the appellant as a reservation of land "for reservoir purposes" is void for uncertainty. (*Lange* v. *Waters*, 156 Cal. 142 [103 Pac. 889, 19 Ann. Cas. 1207]; *Nineteenth Realty Co.* v. *Diggs*, 134 Cal. App. 278, 285 [25 Pac. (2d) 522]; *Simpson* v. *Schurra*, 91 Cal. App. 640, 647 [267 Pac. 384].) In holding that an exception to a grant which was attempted to be reserved to the grantor by the terms of a deed was void for uncertainty, the court in the case of *Lange* v. *Waters, supra,* quoted with approval from the case of *Darling* v. *Crowell*, 6 N. H. 421, as follows:

"Where in a grant of land there was an exception of one acre and a half reserved for the use of flowing water for a mill without location of the land, the exception was held void for uncertainty."

There is nothing in section 1104 of the Civil Code, nor in the three cases above cited, upon which the appellant relies, in conflict with what we have said regarding the invalidity of the alleged reservation for uncertainty. In the cases cited, the exceptions from the grants specifically refer to rights of way which had previously been used for long periods of time. The location and identification of the excepted portions of lands conveyed were readily ascertainable. By the express terms of section 1104 of the Civil Code the easements which are thereby recognized as valid are those which are reserved or "transferred *in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred*".

In the present case there is no evidence that any portion of the grantor's land was ever previously or at all used for the construction or maintenance of *reservoirs*. It will be observed that the language in question does not purport to reserve a license to "flood the land of the grantor". It merely purports to except from the grant "all land which *at high water* is covered with water", *for reservoir purposes.* No reservoirs were ever constructed on the plaintiff's premises. The plaintiff and other witnesses testified that they had never known that land to be flooded with water. The reser-

vation of all land which is covered by water during "high water" is too indefinite and uncertain to exclude therefrom any particular portion of the property. It is said in 4 Thompson on Real Property, 381, section 3272: "A part excepted from a grant must be as clearly described as the parcel granted." Assuming, without so deciding, that the language of the deed relied upon by the appellant may be sufficiently specific to reserve "for reservoir purposes" all land which is ordinarily covered during "high water" created by storms or floods occurring in the ordinary processes of nature, certainly it does not include land that is wilfully or negligently flooded by artificial means, for instance, as the evidence of this case suggests, by deliberately conveying into the canal a quantity of water in excess of the maximum capacity of the canal. The language of the exception in the deed could have no such absurd construction.

The record contains no substantial evidence that the appellant procured by prescription an easement to flood the land of plaintiff, or to use it for reservoir purposes. A right by prescription to flood land with water or to use it for the construction and maintenance of reservoirs thereon, may be acquired only by proof of open, notorious, exclusive and continuous use of the property for that purpose for a period of five years or more. (*Ketcham* v. *Modesto Irr. Dist.*, 135 Cal. App. 180, 191 [26 Pac. (2d) 876]; 1 Thompson on Real Property, 487, sec. 377 et seq.; 19 C. J. 878, sec. 32 et seq.) The evidence in this case shows no such use of the plaintiff's property.

It was not prejudicial error for the court to permit the brother of the plaintiff to testify over the objection of the appellant that Mr. Emmert, the manager of the Modesto Canal & Irrigation Company, assured him there was no danger of his land being flooded. In response to the question, "Do you think that there will be a day or time this here ground might be flooded or any chances" (of it)? Mr. Emmert replied, "No, since I got that pipe in there, (and) that bank piled up, you needn't worry." If that evidence is competent for no other purpose, it tends to refute appellant's claim of a prescriptive right to flood the land with water. It shows that the appellant had notice that the plaintiff claimed a right to cultivate that land and to produce thereon

. a crop of tomatoes, to which the appellant then made no objection or claim of easement.

 It was not error for the court to permit the witness Sambueso to testify, over the objection of the appellant, that in the early part of May, 1935, which is the very time when plaintiff's crop was destroyed, the water from this same canal flooded his property which is situated about a mile above the plaintiff's land and 300 feet distant from the canal, and that tenants of a small cottage belonging to the witness and situated at that place vacated the premises on account of the flood water. This evidence was competent as tending to show that the canal was then permitted to carry a quantity of water in excess of its maximum capacity.

 Nor was the following ruling of the court erroneous. The plaintiff was being examined with respect to the damage which he sustained as a result of flooding his premises. This colloquy occurred:

"Q. Will you state to the jury whether or not the plants, tomato plants growing on the Noble land were destroyed? A. They were totally destroyed. Q. By means of what? A. By water coming over the banks. Mr. Barber (Attorney for the Defendants): Object as calling for the conclusion of the witness. The Court: The objection is overruled."

The question had been answered. The proper motion was to strike out the objectionable portion of the answer. This was not done. Moreover, the answer was harmless. The witness had previously testified that the damage to his crop occurred from the overflowing of the banks of the canal, and not by seepage. Undoubtedly the damage was done chiefly by the overflowing of the banks. Large quantities of water flowed upon plaintiff's land from that source.

The judgment is affirmed.

Held, J., *pro tem.*, and Plummer, J., concurred.