[Civ. No. 2316.   Third Appellate District.—July 15, 1921.]

## WILLIAM H. TORMEY et al., Appellants, v. ANDERSON-COTTONWOOD IRRIGATION DISTRICT (a Public Corporation), Respondent.

[1] INJUNCTION—FINDING—NEGATIVE PREGNANT.—A finding in an action to restrain an irrigation district from permitting seepage water from its canal to flow upon the land of the plaintiffs, that it is untrue that defendant ever since the use by it of the canal has negligently or carelessly or without right allowed water to flow upon the lands of the plaintiffs, is in the nature of a negative pregnant and implies the truth of the affirmative allegation which it attempts to deny.

[2] ID.—SEEPAGE FROM CANAL—FINDING—EVIDENCE.—In this action to restrain the defendant from permitting seepage water from its canal to flow upon the land of the plaintiffs, the finding of absence of seepage is contrary to the evidence.

[3] CANAL CORPORATION—CONSTRUCTION OF DITCH—PREVENTION OF SEEPAGE—NEGLIGENCE.—To knowingly construct a canal through loose sand or gravel incapable of holding water without taking any steps to prevent or control seepage therefrom constitutes negligence.

[4] ID.—CONSTRUCTION OF CANAL—LIABILITY FOR DEFECTS.—If, in the actual operation of a canal, sudden and unexpected damage results by reason of some hidden defect which could not reasonably have been foreseen, the owner will not be liable in damages, being chargeable only in case of negligence, but after discovery of the defect and after reasonable opportunity to correct it, if he continues the use, his liability for subsequent damages is the same as if he had known of the defect at the time of construction.

[5] ID.—FAILURE TO ENLARGE STORM DRAIN—LACK OF CONTRIBUTORY NEGLIGENCE.—In an action to restrain the defendant from permitting seepage water from its canal to flow upon the plaintiffs' lands, the plaintiffs are not guilty of contributory negligence barring recovery because they failed to increase the capacity of a storm drain to a capacity sufficient to carry off the additional seepage water.

[6] ID.—EVIDENCE—MITIGATION OF DAMAGES.—Evidence that plaintiffs failed to use ordinary care to prevent the injury after the seepage began to flow down upon their land may be considered in mitigation of damages, but if by the exercise of such care they

---

4. Liability for injury to private property by construction and operation of canals, note, 61 L. R. A. 858.

could have avoided the injury, they would be entitled to recover as damages the reasonable expenditures made necessary by the additional water.

[7] ID.—DAMAGES FROM SEEPAGE—RIGHT OF LAND OWNER—CONSTITU-
TIONAL LAW—CARE IN CONSTRUCTION IMMATERIAL.—One whose land is injured by seepage water of a canal constructed for public purposes and to serve the purpose of distribution of water for public use is entitled to damages, in view of article I, section 14, of the constitution, regardless of the care that may be taken in the construction. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Shasta County. J. E. Barber, Judge. Reversed.

The facts are stated in the opinion of the court.

R. L. Shinn for Appellant.

Carr & Kennedy for Respondent.

FINCH, P. J.—This action was brought to restrain the defendant from permitting seepage water from its canal to flow upon the lands of plaintiffs and for damages caused by such water. Judgment was rendered in favor of the defendant and the plaintiffs appeal. The plaintiffs allege: "That said ditch or canal was negligently and carelessly constructed by defendant, and that because of such construction by defendant water has constantly escaped and seeped through the bottom and banks of said canal, and said defendant, ever since the use by it of said canal or ditch for conducting water has negligently, carelessly and without right allowed said water to flow to and upon the said lands of plaintiffs." These allegations are denied by the defendant. The defendant alleges, in substance, that it is an irrigation district organized under the laws of the state; that in accordance with the California Irrigation District Act it "caused to be prepared by a competent irrigation engineer a set of plans and specifications for the construction of said canal, which said plans and specifications were duly and regularly approved by the State Engineer of the State of California and by the Irrigation District Bond Commission"; that the construction of said works was authorized by a vote of the people of the district; that the canal was

constructed in accordance with said plans and specifications; and that said canal has ever since been used for conveying and distributing water to the lands within said district for public use. These affirmative allegations of the answer are clearly established by stipulation and proof. No negligence in the construction of the canal is shown.

The plaintiffs' lands are adjacent to and northerly from the town of Anderson, and within the defendant district. Within said lands is an irregular shaped body of about twenty-five acres which, until partially drained, was a natural swamp into which the drainage from the neighboring territory lying to the west thereof collected. Until recent years nothing was produced in the swamp except wild hay, which was usually harvested from June to August of each year, depending upon the rainfall of the preceding winter and spring. Many years ago a ditch was constructed in an easterly direction which partially drained the swamp into the Sacramento River. In the year 1917 the defendant constructed the section of its canal to the west of plaintiffs' lands in part along a steep hillside, and at an elevation of about fifty feet above the swamp. This section of the canal, the only one in question here, was well constructed and, in the language of the defendant's engineer, "thrown so far back in the bank that the cut line on the downstream side came about the water line of the ditch." The ground surface was plowed on the lower side "so that there would be a good bond between the old ground and the fill" and "stumps and large roots" were removed. The evidence shows that the consulting engineer was justified in saying, "I thought it was an excellent piece of construction."

The appeal is taken on a bill of exceptions settled by the court and the appellants specify various particulars in which it is claimed that the evidence is insufficient to support the findings.

The court found that the portions of the lands which plaintiffs allege were overflowed by seepage water "had never been productive prior to the construction of defendant's canal, and had never been used for the growing or production of crops, except wild hay, for the reason that the same were swampy and unproductive." Witnesses for the plaintiffs testified that five or six acres of the swamp produced cultivated crops during the years 1913 to 1915,

inclusive, and all but about an acre and a half thereof produced crops in 1916 and 1917. There is nothing in the record to contradict this testimony and four of the defendant's witnesses gave testimony in corroboration thereof, stating that William Vlach, who prior to 1916 farmed the lands now owned by the plaintiffs, plowed portions of the swamp. One of these witnesses, James F. Bedford, testified that a small portion was put into alfalfa and that Mr. Vlach plowed "quite a lot" of it. The finding that the swamp had never been productive has no support in the evidence.

[1] The court finds that "it is untrue that said defendant ever since the use by it of said canal or ditch for conducting water has negligently or carelessly or without right allowed said water or any water to flow to or upon the said lands or any lands of the plaintiffs." This finding, attempting as it does to negative an affirmative allegation of the complaint, is in the nature of a negative pregnant and implies the truth of the allegation. (*Southern Pac. R. R. Co.* v. *Dufour*, 95 Cal. 619, [19 L. R. A. 92, 30 Pac. 783]; *Auerbach* v. *Healy*, 174 Cal. 65, [161 Pac. 1157]; *State ex rel. Russell* v. *Box*, 34 Tex. Civ. App. 435, [78 S. W. 982].) The appellants, however, make no objection to the sufficiency of the finding, but specify only that it is unsupported by and contrary to the evidence. [2] The evidence that seepage water from the defendant's canal flowed down to and upon the swamp is conclusive. The court found that in the "early spring" of the year 1918 the plaintiffs had "fully prepared the ground for planting and planted various valuable crops described in paragraph VIII of the plaintiffs' complaint," alleged in said paragraph to comprise twenty acres of the swamp. The court further found "that in addition to the crops so planted the plaintiffs fully plowed and [prepared?] for planting three and one-half acres of said land." It thus appears that after the end of the rainy season all but an acre and a half of the swamp was sufficiently dry to be plowed and planted. The evidence shows without conflict that within about two weeks after the defendant turned water into its canal in May, 1918, water began to flow into the swamp and continued throughout the irrigating season, covering the swamp and destroying the crops growing thereon. The evidence shows that the crops referred to in the findings were planted the latter

part of May.   Climatic conditions in the Sacramento Valley
are such as to make it clear that if the drainage of the
swamp was of such character as to carry off the winter's
accumulation of water and render the land tillable by the
latter part of May the natural drainage water from the low
foothills would not keep the land flooded during the re-
mainder of the dry season.   The evidence shows that the
drainage facilities provided by the plaintiffs were sufficient
to protect their crops from any natural flow of water into
the swamp during the cropping season of 1918.

There was some contention that the flooding of the swamp
was caused by a general rise of the water-table due to the
irrigation of lands in the district, but the evidence shows
that the lands, the irrigation of which might probably have
that effect, were not in fact irrigated in the year 1918 until
after the swamp was flooded.   Witnesses for the plaintiffs
testified that the water which caused the damage seeped
from the defendant's canal and flowed down in surface
streams to the swamp.   This testimony is corroborated by
that of O. F. Oliphant, a ditch tender for the defendant,
and one of its witnesses at the trial, who testified that he did
not find any water seeping from the bank of the canal dur-
ing the year 1918; ''by 'bank' I mean the immediate levee
or upthrow. . . . I noticed seepage water below the bank of
the ditch, from the McFarland place down to the high
school. . . . I noticed the water in 1917 the same as I
noticed it in 1918.''   Two gulches referred to in the testi-
mony as gulches ''F'' and ''E'' merge and drain into the
swamp.   Mr. Oliphant testified on cross-examination: ''I
paid particular attention to those drains that ran out below
the canal and merge in that gulch which is marked 'F' on
the map; I noticed the branch of that gulch marked 'E';
I noticed all of them; I noticed water coming from below
the line of the canal and coming out and running down
these drains; . . . there was water coming out of the hill-
side below the line of the canal in May and June, 1918; it
came out near Diamond Creek here, out through that plug,
out through the cut where the Anderson water-pipe went
through, but I don't know whether that was seepage from
the canal or from the water company; I couldn't say
whether the water company's water came through a conduit
of any kind, because it was under the ground; I never

noticed that point prior to 1918; . . . I crossed that plain several times and found water flowing down from the direction of the canal; . . . I don't know that all that water came from the canal; . . . I wouldn't say that the quantity of water has not increased in that gulch 'F' since the water was put into the main canal in 1918, as compared to conditions prior to that time; I noticed an increase; . . . I noticed there was more water in these gulches after the water was turned into the canal in May and June, 1918, than there was prior to that time. . . . I don't remember of seeing any of the depressions that are included in the heads of these drains and the east limits of the town site of Anderson in 1918 that were dry; . . . I noticed water percolating from the soil at the McFarland place, along the hill, and flowing off down into the flat, after the water was turned back into the canal; it was a very short distance it made its appearance, and that was some five or six rods below the canal.'' Without substantial conflict, the evidence shows that the water which flooded the swamp in 1918 came from the defendant's canal.

Appellants concede, as under the evidence they must, that the defendant was not negligent in the original construction, but they contend that it was negligent in failing to correct a defect which developed in the actual operation of the canal. [3] To knowingly construct a canal through loose sand or gravel incapable of holding water, in a situation such as that disclosed here, without taking any steps to prevent or control seepage therefrom, would constitute negligence. (*Turpen* v. *Turlock Irr. Dist.*, 141 Cal. 1, [74 Pac. 295]; *Shields* v. *Orr Extension Ditch Co.*, 23 Nev. 349, [47 Pac. 195].) [4] If, in the actual operation of a canal, sudden and unexpected damage results by reason of some hidden defect which could not reasonably have been foreseen, the owner would not be liable in damages, because he is not an insurer but chargeable only in case of negligence. (*Sutliff* v. *Sweetwater Water Co.*, 182 Cal. 34, [186 Pac. 766].) After discovery of the defect, however, and after reasonable opportunity to correct it, if the owner continue the use, his liability for subsequent damages would be the same as if he had known of the defect at the time of construction. The officers of the defendant knew that there was a heavy seepage from the Anderson section of the canal

during the time it carried water in the year 1917, and throughout the irrigating season of 1918. The only effort to remedy the defect consisted of occasional puddling and shoveling clay into the canal by the ditch tender, who had a beat to walk of seventeen miles a day. In view of the continuing damage being done through many months, this slight effort to correct the defect is not sufficient to overcome the charge of negligence. That the seepage was preventable is indicated by the testimony of the ditch tender, who stated that the effect of his efforts as above set forth was to stop the seepage altogether at one point and to reduce it seventy-five per cent at some others. The seepage was not continuous along the canal but for short distances only at different points. There are various common methods of preventing or reducing seepage from canals, some of which are described in the evidence. The canal may be lined with concrete at points where seepage occurs, heavy asphalt oil may be applied, the sides and bottom may be puddled, a flow of water carrying large quantities of sediment and silt during storm periods tends to lessen the seepage. Drain ditches may be constructed below the point where the seepage comes to the surface. In this case the deepening and enlargement of the drain from the swamp to the river would have prevented the damage. One of the engineers testifying for the defendant estimated the cost of such deepening and widening at something over two hundred dollars. An engineer for the plaintiffs placed the cost at about fifteen hundred dollars. In view of all the circumstances, it must be held that the defendant did not use ordinary care to prevent the damage.

[5] The defendant contends that the plaintiffs are guilty of contributory negligence in not maintaining their drain in condition to carry off the surplus water from the swamp. The trial court seems to have been impressed with this contention, for it found, "that it is possible by grading said drain and annually cleaning the same to carry off from the lands of plaintiffs all surplus waters collected in said swamp or marsh or pond by the drainage from the neighboring territory and seepage from defendant's canal." As herein before pointed out, the drain was sufficient to prevent the flooding of the swamp during the year 1918 from natural causes. The plaintiffs are not guilty of contributory negli-

gence barring recovery in their failure to increase the capacity of the drain so as to carry off the additional water coming down from the defendant's canal. (*McCarty* v. *Boise City Canal Co.*, 2 Idaho, 245, [10 Pac. 624].) **[6]** Evidence that plaintiffs failed to use ordinary care to prevent the injury after the seepage water began to flow down upon their land may be considered in mitigation of damages, but if by the exercise of such care they could have avoided the injury to their crops altogether, they would be entitled to recover as damages the reasonable expenditures made necessary by the additional water. In 3 Shearman & Redfield on Damages (sixth edition), section 741, the rule is stated as follows: "The plaintiff cannot recover compensation for any damage which he might have avoided by the use of ordinary care and diligence, after first becoming aware of the injury of which he complains," citing *Lloyd* v. *Lloyd*, 60 Vt. 288, [13 Atl. 638], where it is said: "The plaintiff suffered damage by the wrongful obstruction of his drain. 'He might have gone on, and sunk the new drain made by the defendants, as aforesaid, below the outlet of the covered drain, at an expense not exceeding twenty-five dollars,' says the referee. Without taking this precaution he was damaged one hundred dollars. It is the duty of a person injured by the fault of another to use all reasonable means to protect himself against injuries consequent. If injured in his person, he must attend to his cure. If injured in his estate, he must attend to its preservation. If he fails in this duty, he cannot gather the fruits of his own negligence. The plaintiff could have indemnified himself at an expense of twenty-five dollars, and this is the legal measure of his damage."

Respondent contends that, since its irrigating system was planned and constructed under legal sanction for a public purpose, any detriment suffered by the plaintiffs is "*damnum absque injuria*," citing some of the reclamation cases wherein it was held that one owner has the right to levee against flood waters even though the effect be to throw such waters back upon his neighbor. Such decisions are based upon the theory that flood waters are a "common enemy" against which each owner may protect himself even to the damage of other owners. It has further been held in numerous cases that a reclamation district is a governmental

agency to carry out a specific purpose and that it cannot, therefore, be sued without the consent of the state. The law under which defendant district is organized, however, authorizes it to sue and be sued. (*Boehmer* v. *Big Rock Irr. Dist.*, 117 Cal. 28, [48 Pac. 908].) While irrigation adds greatly to the public welfare, districts such as the defendant are organized primarily for the benefit of the land owners therein, who ought not to be permitted to do collectively what they cannot lawfully do individually to the injury of their neighbors. As said in *Howell* v. *Big Horn Basin Col. Co.*, 14 Wyo. 38, [1 L. R. A. (N. S.) 596, 81 Pac. 791], "the great benefit to be derived from such enterprises as that of the defendant does not authorize the promulgation of a principle that will permit one tract of land to be reclaimed at the expense of the destruction of another without compensation"; and in the case of *Bradbury* v. *Vandalia Levee & Drainage Dist.*, 236 Ill. 36, [15 Ann. Cas. 904, 19 L. R. A. (N. S.) 991, 86 N. E. 163], where the law authorized the district to sue and be sued, the district "was organized upon the petition of a majority of the owners of lands in the belief that they would be benefited by the organization. To deny to the plaintiffs a recovery of the damages which they have sustained by the efforts of the owners of lands within the district to benefit themselves would be against natural right and every sentiment of justice." It is not necessary to decide whether an irrigation district is liable for damages caused by seepage from its canal of a continuing nature which cannot be prevented by the exercise of ordinary care, for in this case it is shown that the defendant failed to exercise such care to prevent the damage.

The judgment appealed from is reversed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 12, 1921, and the following opinion then rendered thereon:

THE COURT.—The petition of the respondent for a rehearing in this court is denied.

[7] In so far as the opinion of the district court of appeal appears to indicate that the plaintiffs cannot recover damages for the injury to their land unless it appears that the flooding thereof which caused the injury was the proximate result of the negligence of the defendant in the construction and maintenance of its canal, we disapprove the same. The canal is constructed for public purposes and to serve the purpose of distribution of water to public use. Apparently the damage to the plaintiffs is caused directly by seepage of water carried in said canal through the intervening soil on to the adjoining land of the plaintiffs. In such cases the plaintiff is secured a right to damages by the constitutional provision that private property shall not be damaged for public use. (Art. I, sec. 14.) In such cases the care that may be taken in the construction of the public improvement which causes the damage is wholly immaterial to the right of the plaintiff to recover damage, if the improvement causes it. This was expressly decided in *Reardon* v. *San Francisco,* 66 Cal. 505, [56 Am. Rep. 109, 6 Pac. 317], and *Eachus* v. *Los Angeles,* 103 Cal. 614, [42 Am. St. Rep. 149, 37 Pac. 750]. The proposition apparently was not considered by the district court and perhaps was not presented in the briefs or in the court below. Nevertheless, upon a new trial the question should remain open.

All the Justices concurred.