W. R. GROFF et al. v. RECLAMATION DISTRICT No. 108, Respondent.

[Civ. No. 3596. Third Appellate District.—February 16, 1929.]

EARL MYERS, Appellant, v. RECLAMATION DISTRICT No. 108, Respondent.

[Civ. No. 3595. Third Appellate District, February 16, 1929.]

J. W. BROWNING, Appellant, v. RECLAMATION DISTRICT No. 108, Respondent.

Seth Millington for Appellants.

Huston, Huston & Huston and Thomas Rutledge for Respondent.

FINCH, P. J.—The first two of the above-entitled actions were tried together and, at the close of the evidence, the court instructed the jury to return verdicts in both cases in favor of the defendant. On the return of such verdicts judgments were entered thereon in favor of the defendant. The last of the three actions was tried before the court without a jury, but upon the evidence introduced in the other cases and additional evidence taken after the rendition of such verdicts. Findings and judgment went in favor of the defendant and the plaintiffs in all three actions have appealed on a single record, and the appeals have been argued together.

Plaintiff Browning is the owner of agricultural lands within the defendant district and the other plaintiffs are his tenants. In the year 1918 an irrigation canal was constructed by the defendant through Browning's land and water has been conducted through the canal for irrigation during every season since 1919. Browning, who was a trustee of the defendant at the time the plans for the canal were adopted and had theretofore had extensive experience in reclamation work, executed deeds, after the construction of the canal, conveying to the defendant "an easement and right of way for the construction, repair, improvement and maintenance of a canal and banks, for conducting and flowing water therein, with the right to flow and have flow water therein from whatever source and whether naturally flowing therein or artificially conducted or brought thereto, and whether drainage, seepage, rain, flood water, or water for or from irrigation, over, along and across the following tract, strip

or parcel of land.'' This is followed by a particular description of the right of way. The lands involved in these actions lie adjacent to the canal.

Plaintiffs Groff sue for alleged damages to their crops during the seasons of 1923, 1924, and 1925, caused by seepage water from the canal. Plaintiff Myers sues for damages similarly caused to his crops of 1924 and 1925. They held under yearly leases executed during the years mentioned. Plaintiff Browning sues for alleged damages to the land itself, caused by the seepage, and for an injunction.

Browning testified that most of the land is ''tule land; used to be tule land, and of course that is porous soil and had high tule there, very high. . . . Allows the water to pass along it sometimes for over two miles.'' Under such circumstances, heavy seepage of water from the canal must have been foreseen by all experienced persons who were familiar with the facts.

■ ''Whenever a grant of a right of way is executed by a landowner he thereby estops himself from afterward prosecuting any action for the past, present, or future damages that may have occurred, or reasonably be expected to occur, by reason of the necessary, natural, and ordinary use of the utility or public service for which the right of way is granted. And this includes the natural, reasonably to be anticipated, and ordinary injury resulting to adjacent land from seepage, if the land is of a character that admits of or may be reasonably expected to admit of such action of the waters taking place.'' (*Sternes* v. *Sutter Butte Canal Co.*, 61 Cal. App. 737, 743 [216 Pac. 66]. See, also, *Yolo Water & Power Co.* v. *Hudson*, 182 Cal. 48, 52 [186 Pac. 77].)

■ Appellants contend, however, that the foregoing rule is not applicable where the damage results from failure to follow the plans adopted which were within the contemplation of the parties to the conveyance at the time of its execution and that, in this case, the plans provided for a toe drainage ditch below the bank of the canal, which ditch was not constructed until after these suits were commenced.

The evidence in the Groff and Myers cases does not show that any plans for such drainage ditch were adopted or contemplated at or prior to the conveyances of the right of way to the defendant or that if such a ditch had been con-

structed it would have prevented the damage of which complaint is made. It was not error, therefore, to instruct the jury to find for the defendant in those cases.

In the Browning case, after the verdicts had been returned in the other cases, oral evidence was introduced to the effect that the construction of a toe drainage ditch was a part of the defendant's plans at the time the right of way was granted. In addition to this testimony, a letter, dated October 7, 1925, from the engineer of the defendant to Browning, was admitted in evidence. This letter states:

"Mr. Poundstone has instructed me to inquire whether you wish us to proceed at once with construction of remedial measures intended to prevent a repetition of damage from seepage from the district's main irrigation canals to your lands. . . . The district's plans contemplate the construction of seepage ditches at the toe of the irrigation canal levees as follows: (Here follows a description of the ditches as 4 feet deep, 3 feet wide on the bottom and 15 feet wide at the top.) . . . It is possible that a small amount of additional right of way will be required for their construction. We understand the district stands ready to pay for this additional right of way at the price for which it has heretofore acquired rights of way from you and others."

The president of the board of trustees of the defendant testified that Browning first complained of seepage from the canal two or three years before the toe ditch was constructed; that this complaint was made during a meeting of the trustees; that the witness "asked him if he would give his permission to put that ditch in to see if it would correct the condition. . . . At that time he refused his permission. . . . It occurs to me now it must have been two years after that, Mr. Millington (attorney for Browning) finally said Mr. Browning would permit this ditch to go in; he didn't believe the ditch would correct the fault and didn't want to release any rights he had to sue the district, but he would permit us to go ahead and do the work. We passed a resolution at that meeting of the board and ordered the work done and the work was done shortly after that resolution was passed." Written permission to construct the toe ditch was given October 13, 1925, in a letter replying to the engineer's letter of October 7th. The toe ditch was completed in the spring of 1926. This case was tried in October, 1927, after

the toe ditch had been in operation for two seasons. The plaintiff testified: "Mr. Millington: Now, you say after the institution of this action they built a toe ditch along that levee? A. Yes. Q. Has that had any effect in stopping the seepage? A. No, it only made more seepage—yes sir. They carried it down the county road on my land for two miles. . . . Mr. Huston: I submit he hasn't answered the question. Mr. Millington: He answered the question; he said no, it hadn't, and explained why it hadn't." On cross-examination the plaintiff testified: "Q. What was the first year you noticed this water on your land? A. More or less from the first year they ever ran it out there. . . . It is getting greater all the time. . . . It has got so now it is ruining my land entirely."

It cannot be held that the trial court was not justified in accepting plaintiff's foregoing testimony at its face value. If the drainage ditch which was within the contemplation of the parties when the right of way was granted is ineffective to prevent seepage through the loose, porous tule land, then the plaintiff suffered no damage from the defendant's failure to construct it prior to 1926.

"The condemnor may bind itself to a specified plan of construction . . . and have the damages assessed upon that basis. In that case an action can be maintained for any damage caused by a subsequent change in the works or use. So if the damages were in fact assessed on the basis of a certain mode of construction, by the procurement or acquiescence of the parties, it has been held that this fact may be shown and relief obtained in case of a change of construction." (Lewis on Eminent Domain, 3d ed., sec. 830.) Of course, the same rule applies where there has been a voluntary grant of a right of way procured on the understanding that a particular type of construction was to be installed. But it is axiomatic that no damage can be recovered on account of any departure from the contemplated plan which has caused no damage.

It may be stated further that, while the plaintiff testified that the maintenance of the defendant's irrigation system had greatly depreciated the value of his land, the president of the board of trustees testified directly to the contrary.

The judgments in all the three cases are affirmed.

Plummer, J., concurred.