[Civ. No. 4780.   Third Appellate District.—November 7, 1933.]

A. E. KETCHAM et al., Respondents, v. MODESTO IRRI-
GATION DISTRICT (a Quasi-Public Corporation)
et al., Appellants.

L. J. Maddux and Hankins & Hankins for Appellants.

J. W. Hawkins and Hawkins & Hawkins for Respondents.

THOMPSON, J.—From a joint judgment of $7,500 which was rendered pursuant to a verdict returned against two separate irrigation districts, as compensation for damage resulting to agricultural land from the seeping of water from an irrigation ditch, the defendants have appealed.

The appellants seek a reversal of the judgment on the grounds that (1) the plaintiffs are estopped from claiming damages to their land from seepage of water from a ditch, for the construction of which their predecessors in title conveyed a strip of land through their property, (2) an action for damage which results from the natural and ordinary seepage of water from a ditch, in the absence of negligence in the construction or maintenance thereof, does not lie, (3) the defendants have acquired prescriptive rights to maintain the canal in the present condition by operating it adversely to the claims of plaintiffs for more than five years without objection, (4) a joint judgment against two separate water districts may not be lawfully rendered for damages which result from seepage from separate sources which are controlled by the respective districts, and (5) the judgment is based upon inconsistent instructions which are irreconcilable.

The Modesto Irrigation District and the Waterford Irrigation District are organized as separate entities under the statutes of California for the purpose of acquiring and furnishing water to their respective districts. These water districts are contiguous to each other and are adjacent to the Tuolumne River east of Modesto. Both districts have

been in existence for many years. The Modesto District comprises 81,000 acres of land. The Tuolumne River flows westerly through Stanislaus County, passing through the outskirts of the city of Modesto. Lake Warner is a small body of water located eighteen miles east of Modesto and one mile north of the Tuolumne River. There is a gradual slope of sandy loam soil extending from this lake southerly toward the river. A few feet beneath the surface of the soil there is a hard-pan substantially impervious to water.

The plaintiffs own a tract of agricultural bottom land situated between this lake and the river. Plaintiffs' land is a part of a larger tract formerly owned by John W. and Ann M. Roberts, husband and wife. November 4, 1891, Mr. and Mrs. Roberts made an agreement to convey to the Modesto Irrigation District a strip of land running easterly and westerly midway between the lake and the Tuolumne River, through their premises, a distance of nearly two miles and ''150 feet wide for a right of way for the canal of said District as the same is now or may hereafter be located, together with the right of ingress and egress over the lands hereinafter described to and from said right of way''. Seven days later, in consideration of the sum of $1820, they deeded that strip of land to the Modesto Irrigation District, pursuant to the terms of the agreement, together with ''the right to pass and repass over and upon all the lands and premises owned by the parties of the first part adjacent to said main canal, with men, teams and otherwise with material as may be necessary for the construction, repair, maintenance and operation of the aforesaid canal''. Subsequently John W. Roberts died. His estate was distributed to his widow, Ann M. Roberts. In 1909, the widow, in consideration of the sum of $460, made a further deed of conveyance to the Modesto Irrigation District of another strip of land in the same tract to be used for canal purposes, together with a similar easement over adjacent lands ''necessary, proper or convenient for the construction, repair, operation and maintenance of the aforesaid canal''. In 1910, for the further consideration of $135, she made a third deed to another strip of land in that tract to be used for the same purpose. This deed contains the same language respecting the use of the demised land for a canal and the easement appurtenant thereto, which was contained

in the former instruments of conveyance. Ann M. Roberts died in 1911. The plaintiffs' land, which is involved in this suit, was acquired by them from the estate of Ann M. Roberts by decree of distribution which was made January 10, 1913. In the meantime the Modesto Irrigation District acquired title to Warner Lake and converted it into a reservoir in which to store water for use in the district. This reservoir contains an area of 2,400 acres. The Modesto Irrigation District constructed an open dirt canal fifty feet in width and five and a half feet in depth from the La Grange Dam situated in the Tuolumne River seven miles east of the plaintiffs' land and extending westerly through the Roberts' property along the strip of land theretofore purchased. The main canal also conveyed a large quantity of water from the Tuolumne River into the reservoir for storage. It is estimated this canal diverted from the Tuolumne River some 275,000 acre-feet of water per annum. Prior to the construction of the reservoir, the season during which the canals were used to convey water to the consumers was confined chiefly to May, June and July. After the reservoir was completed and the canal system was perfected, the company was enabled to furnish irrigation during practically the entire year.

From the time the plaintiffs acquired their land in 1913, they were engaged in producing therefrom annual crops of grain, corn, alfalfa and melons. There is evidence that the land in that vicinity consists of a fertile, porous, sandy silt soil. While there is a conflict of evidence regarding the seeping of water from the reservoir or the canal, there is substantial evidence that no appreciable damage to plaintiffs' land occurred on that account until 1919. Some water accumulated that year on the flat on plaintiffs' land. In 1919 they complained to the Modesto Irrigation District of seepage. There is evidence that the Modesto District then constructed a lateral ditch by means of which it drained the land and repaired the damage; that the plaintiffs thereafter raised good crops without serious trouble from further seepage until 1924. It appears that from 1924 to 1927, there was an increased seepage of water from the canal of the defendant Modesto Irrigation District, resulting in greater damage to the lands of the plaintiffs. In 1927, the plaintiffs protested against this seepage and consequent

damage, and demanded that the defects in the system which permitted this seepage of water should be remedied. There is substantial evidence that the Modesto District then promised to correct the defects complained of, and that it did thereafter construct certain lateral ditches and drain the surface water from the land of plaintiffs, and perform other acts for the purpose of preventing the seepage complained of. It also appears, subject to a conflict of evidence, that during the following two years, the lands of plaintiffs became seriously permeated with water which seeped from the canal of the Modesto Irrigation District to an extent that it stood upon the surface of the land, in certain depressed locations, in ponds of some considerable size. The plaintiffs furnished evidence that the soil was saturated with water from that source to an extent that it became water-logged and soured by the forcing of alkali to the surface, and destroying the natural fertility of the soil and plaintiffs' crops.

August 11, 1919, the Modesto Irrigation District executed a written contract with the Waterford Irrigation District, which was duly recorded in the records of Stanislaus County October 14, 1919, by the terms of which the first-mentioned district agreed that "the Modesto canal shall be increased and enlarged to the end that each year thereafter it shall be of sufficient capacity to carry the amount of water up to 250 second feet, required by the Waterford Irrigation District at said time". In consideration of the sum of $254,000, to be paid by the last-mentioned district to the Modesto District, it was agreed the Modesto District irrigation system was to become the regular carrier of a large quantity of water for the benefit of the Waterford District and its consumers, in specified increased quantity not to exceed the designated 250 second-feet. Pursuant to this agreement it appears that in order to fulfil the increased demands upon the Modesto District it constructed in 1923, jointly with the Turlock Irrigation District, the Don Pedro storage reservoir with a capacity in normal years of 260,000 acre-feet of water, a part of which was carried through the canals of the Modesto District. It was estimated that since the construction of the Don Pedro reservoir for the joint benefit of the Modesto and Turlock districts approximately

86,000 acre feet of water were diverted from that reservoir through the canals of the Modesto District.

It does seem apparent that to meet the increased obligations created by its agreement with the Waterford District, the Modesto District made substantial improvements in its system, and on that account actually did greatly increase the quantity of water which was thereafter carried through its canals, and stored in its reservoir. This increased quantity of water in the canals would naturally result in an increase of the seepage therefrom to the detriment of the lands of plaintiffs.

This suit for damages was commenced November 2, 1929. The cause was tried with a jury. A verdict of $7,500 was returned against the defendants. A joint judgment for that amount was accordingly rendered against both irrigation districts. From this judgment the defendants have appealed.

■ The ordinary rule is that an irrigation district is bound to exercise reasonable care in the construction and maintenance of its ditches and canals, and when property is injured by seepage or flooding due to faulty construction or negligent maintenance of an irrigation ditch or canal, the irrigation district is liable for the resulting damage. (26 Cal. Jur. 152, secs. 356–359; *Tormey* v. *Anderson-Cottonwood Irr. Dist.*, 53 Cal. App. 559 [200 Pac. 814]; *Turpen* v. *Turlock Irr. Dist.*, 141 Cal. 1 [74 Pac. 295]; *McPherson* v. *Alta Irr. Dist.*, 14 Cal. App. 353 [112 Pac. 193]; *Nahl* v. *Alta Irr. Dist.*, 23 Cal. App. 333 [137 Pac. 1080]; 15 R. C. L. 486, sec. 38; *Stephenson* v. *Pioneer Irr. Dist.*, 49 Idaho, 189 [288 Pac. 421], 69 A. L. R. 1225, note, p. 1232; 3 Kinney on Irrigation, 2d ed., p. 3088, sec. 1675.) The general rule regarding the liability for negligence in the construction or maintenance of a ditch which results in damages to adjacent property because of percolation of the water, is well expressed in the authority last cited. It is there said:

"The seepage of water from ditches, canals, or other works, is but one method of its escape from such works. Therefore, the same duty devolves upon the owner of such works to so construct them as far as possible so that the water will not seep or percolate therefrom to the injury of lands of others below. The law upon this subject and that

of overflow and leakage, discussed in the last section, is tersely expressed in the legal maxim, *sic utere tuo ut alienum non laedas,* which expressed in English and applied to the subject under. discussion, is: 'The owner of such works must so use, maintain, and operate his works as not to injure the property of another.' And, as in other cases, the owner is held not to be the insurer against all damages incurred,. he is held liable in damages for all injuries which are the direct and proximate result of his actual negligence, or the failure to exercise ordinary and reasonable care." To the same effect are the following authorities, to wit: *Parker* v. *Larsen,* 86 Cal. 236 [24 Pac. 989, 21 Am. St. Rep. 30]; *Nola* v. *Orlando,* 119 Cal. App. 518 [6 Pac. (2d) 984]; *Fleming* v. *Lockwood,* 36 Mont. 384 [92 Pac. 962, 122 Am. St. Rep. 375, 13 Ann. Cas. 263, 14 L. R. A. (N. S.) 628]; *Howell* v. *Big Horn Basin Co.,* 14 Wyo. 14 [81 Pac. 785,·1 L. R. A. (N. S.) 596]; 27 R. C. L. 1210, sec. 128; 15 R. C. L. 486, sec. 38.

The foregoing rule, however, is not applicable to the facts of the present case for the reason that the defendants are both irrigation districts which are maintained for the distribution of water for public use. ██ The damaging of private land by the seeping of water from the reservoir or canals of an irrigation district which are constructed and maintained to supply water for public use may not occur, under the inhibition of article I, section 14, of the Constitution of California, without making just compensation therefor. It has been held this obligation is imposed upon one who takes or damages private property for public use, regardless of whether the acts complained of are the result of negligence. (*Tormey* v. *Anderson-Cottonwood Irr. Dist.,* 53 Cal. App. 559, 568 [200 Pac. 814, 818].) In the order of the Supreme Court denying a hearing in the case last cited, after a decision had been rendered therein by the District Court of Appeal, the court said:

"In so far as the opinion of the district court of appeal appears to indicate that the plaintiffs cannot recover damages for the injury to their land unless it appears that the flooding thereof which caused the injury was the proximate result of the negligence of the defendant in the construction and maintenance of its canal, we disapprove the same. The canal is constructed for public purposes and to

serve the purpose of distribution of water to public use. Apparently the damage to the plaintiffs is caused directly by seepage of water carried in said canal through the intervening soil on the adjoining land of the plaintiffs. In such cases the plaintiff is secured a right to damages by the constitutional provision that private property shall not be damaged for public use. (Art. I, sec. 14.) In such cases the care that may be taken in the construction of the public improvement which causes the damage is wholly immaterial to the right of the plaintiff to recover damages, if the improvement causes it. This was expressly decided in *Reardon* v. *San Francisco*, 66 Cal. 505 [55 Am. Rep. 109, 6 Pac. 317], and *Eachus* v. *Los Angeles*, 103 Cal. 614 [42 Am. St. Rep. 149, 37 Pac. 750].)''

This language of the Supreme Court is peculiarly applicable to the facts in the present cause, and is conclusive of the principle there decided. Upon the foregoing authority, and upon principle, it appears to be immaterial whether the defendants in this case were guilty of negligence in the construction or operation of their water systems or not, provided it satisfactorily appears the seepage of water from the reservoir or ditches actually damaged the property of the plaintiffs as alleged. Since there is substantial evidence to support the claim that plaintiffs' land was damaged by seepage of water from the canal, the implied finding of the jury, in that regard, is conclusive on appeal.

The appellants contend, however, that the prior grants of land by the predecessors in title of which the land of the plaintiffs was a part, which grants were expressly made for the purpose of constructing and maintaining irrigation canals, estops them from now recovering damages resulting therefrom, since, similar to the rule in eminent domain, the selling price of the land is deemed to have included all damages incident to the purpose for which the land was sold.

Unquestionably this is the rule which would ordinarily apply under such circumstances. (*Sternes* v. *Sutter-Butte Canal Co.*, 61 Cal. App. 737, 743 [216 Pac. 66, 69]; *Hunt* v. *Sutter-Butte Canal Co.*, 66 Cal. App. 363, 368 [225 Pac. 884]; *Groff* v. *Reclamation Dist.*, etc., 97 Cal. App. 22 [274 Pac. 993]; 26 Cal. Jur. 159, sec. 359; 2 Kinney on

Irrigation, 2029, sec. 1123.) In the Sternes case above cited it is said:

"It thus appears by an unbroken line of authorities, and also as well as by good reasoning, that whenever a grant of a right of way is executed by a land owner he thereby estops himself from afterward prosecuting any action for the past, present, or future damages that may have occurred, or reasonably be expected to occur, by reason of the necessary, natural, and ordinary use of the utility or public service for which the right of way is granted. And this includes the natural, reasonably to be anticipated, and ordinary injury resulting to adjacent land from seepage, if the land is of a character that admits of or may be reasonably expected to admit of such action of the waters taking place."

So, also, it is said in 26 Cal. Jur. 156, section 359:

"One who grants a right of way may not afterwards prosecute an action for such damages, since it is the rule that when a person conveys a right of way over his land, which might have been condemned, it will be conclusively presumed that all the damages to the balance of the land, past, present and future, were included in the consideration."

It follows from the foregoing authorities that the plaintiffs in this case would be estopped by the deeds of their predecessors in title from recovering damages to their land from seepage of water which naturally resulted from the sole use of the canal by the Modesto Irrigation District to carry water for its own benefit for the reason that such damages must have been reasonably anticipated by the grantor. Since a strip of land 150 feet in width was granted "for canal purposes", through a sandy soil, it may be assumed the grantor must have reasonably anticipated ordinary damage would result to adjacent land from seepage of water from a canal running to its full capacity, which was constructed fifty feet in width along the entire length of the demised tract, as a result of carrying the water belonging exclusively to the grantee, Modesto Irrigation District. Since the land was conveyed "for canal purposes", and the deed is silent with respect to the manner of construction or the requirement of a concrete lining to the ditch or other artificial means of preventing seepage of

water, it may be assumed that such unusual, impracticable, and highly expensive method of fortifying the canal against seepage was not contemplated or required by the parties.

While the language of the deeds estops the plaintiffs from asserting damage to their land from seepage of water conveyed through the canal for the exclusive benefit of the grantee's regular members, the estoppel does not apply to damage which may have resulted from seepage from the reservoir which was not constructed on land acquired from the plaintiffs' predecessors in title. The maintenance of the reservoir was not included in the language of the deeds. Nor does the estoppel apply to damages which accrued by virtue of the added burden of carrying in the canal of the grantee a large quantity of water for the use and benefit of the Waterford Irrigation District, which was not a party to the deeds. It must be assumed that seepage of water from an unlined canal which passes through sandy soil will be augmented by the pressure which results from a substantial increase of the body of water which flows therein. If the grantee could escape liability for damages even though the canal was used to carry water for another irrigation district, it might also multiply the burden upon adjacent land by becoming the carrier for numerous other enterprises not contemplated by the terms of the deed. This may not be done. It may not be reasonably said the grantors should have anticipated the canals would be used by the grantee to carry water for the use or benefit of other water districts. Since there is evidence from which it may be reasonably assumed the damage to plaintiffs' land resulted because of the greatly increased burden after the Modesto Irrigation District began to carry a large quantity of water belonging to the Waterford Irrigation District, we are of the opinion the defendants may not be relieved from liability for damages under the doctrine of estoppel. The defense of estoppel was thereby waived. It is impossible to segregate the damage which may have accrued from the water belonging exclusively to the grantee from that which resulted in the carrying of the water belonging to the Waterford District. Moreover, it may be true that no substantial damage would have resulted except for the carrying of the increased quantity of water belonging to the Waterford District.

The defendants contend they acquired a prescriptive right to maintain the canal for carrying water to its full capacity in the manner in which it was used by operating it adversely for a period of more than five years prior to February 15, 1927, without opposition. When complaint of damage from seepage was made by the plaintiffs on the last-mentioned date, it was stipulated between the parties that the statute of limitations would be waived from that date until November 1, 1929, at which time the complaint in this action was filed. ■ It is true that the statute of limitations for damage resulting from seepage of a canal begins to run from the time of discovery of such seepage and resulting damage, and not necessarily from the time of the construction of the ditch. (1 Weil on Water Rights, 3d ed., p. 494, sec. 463; *Middlekamp* v. *Bessemer Irrigating Co.*, 46 Colo. 102 [103 Pac. 280, 23 L. R. A. (N. S.) 795].) It is true that some damage from seepage was complained of by the plaintiffs in 1919, but it appears this slight accumulation of water on the lands of plaintiffs was removed by the defendant Modesto Irrigation District by draining the land. The evidence shows that good crops were thereafter raised on that land. The plaintiffs do not complain of further damage by seepage until 1923. It may not be said the statute of limitations continued to run during the period of time when no substantial damage from seepage occurred after the cause therefor had been removed by the affirmative acts of the defendants.

■ It is true that a property owner may waive his right to damages for the wrongful flooding of his land by a public utility water company, by failure to exercise diligence in taking action within the statutory period of time to prevent the wrong, and that prescriptive rights may be thus acquired by a claimant, in the absence of protest for the statutory period of time. (*Collier* v. *Merced Irr. Dist.*, 213 Cal. 554 [2 Pac. (2d) 790]; *Conaway* v. *Yolo Water & Power Co.*, 204 Cal. 125 [266 Pac. 944, 58 A. L. R. 674].) ■ But adverse use of water which will mature a prescriptive right thereto must be accompanied by actual, open, notorious control and use; it must be adverse and hostile to the plaintiffs' title; it must be under a claim of exclusive right, and it must be continuous and uninterrupted for a period of more than five years. (*Galbreath* v. *Hop-*

*kins,* 159 Cal. 297 [113 Pac. 174] ; 2 Kinney on Irrigation, 2d ed., p. 1875, sec. 1048; 27 R. C. L., p. 1290, sec. 201; 1 Cal. Jur. 549, secs. 38–41.) ▇▇▇ We are of the opinion the evidence in this case amply supports the implied finding of the jury that the defendants did not acquire a prescriptive right to flood the lands of plaintiffs. It shows that the slight damage which resulted from seepage of water in 1919 was protested by the plaintiffs and remedied by the Modesto District by digging a drainage ditch to remove the water. This indicates that both parties recognized the fact that the Irrigation District had no lawful right to thus flood plaintiffs' property. Moreover, the presence of substantial evidence indicates that for a period of time thereafter no appreciable damage resulted from seepage. The plaintiffs could not be bound by a claim of right to perform certain acts, of which claim they had no knowledge. Furthermore, assuming without so deciding, that the Modesto District did acquire a prescriptive right to carry its own water through the canal in spite of damage to plaintiffs' land from seepage, that privilege would not secure for it the further prescriptive right to subsequently augment· the damage by also carrying a large additional quantity of water for another irrigation district.

▇▇▇ The appellants assert that the joint judgment which was rendered against both defendants, as separate irrigation districts, is invalid for the reason that the Waterford Irrigation District had no control or interest in the Modesto reservoir, from which it was contended some of the damage to plaintiffs' land emanated on account of seepage therefrom. In support of this contention of the invalidity of the joint judgment, the appellants rely chiefly upon the cases of *Miller* v. *Highland Ditch Co.,* 87 Cal. 430 [25 Pac. 550, 551, 22 Am. St. Rep. 254], and *Slater* v. *Pacific American Oil Co.,* 212 Cal. 648 [300 Pac. 31]. These cases may be readily distinguished from the facts of the present one. In this case, by the terms of the written agreement which was executed in 1919 between the two irrigation districts, they became jointly interested in the diverting dam and the main by-pass canal through which the water for both districts was conducted. Assuming the evidence may show that the Waterford District did not make use of water from the reservoir, still it does satisfactorily appear that sub-

stantially all the damage which resulted to plaintiffs' land came from seepage from the main canal which was operated and conducted for the joint benefit of both defendants. The reservoir is situated nearly a mile north of the plaintiffs' land. The defendants contended, and the great weight of evidence sustains their claim, that the reservoir occupied a natural depression which was protected against seepage of water by hard-pan or clay which was substantially impervious to leakage. It seems highly improbable that water from the reservoir percolated through the soil to the damage of the plaintiffs' property to such a great distance. The defendants were joint tort-feasors in maintaining and operating the canal to the plaintiffs' detriment. We are satisfied that a joint judgment was properly rendered under the circumstances of the present case.

In the Miller case, *supra*, the facts were quite different from those which appear in this case. In that case the flood waters descended through a natural canyon to a depression in a flat, where they collected near the plaintiff's land. The water from the canyon, however, did not flow upon his land. Several different individuals dug separate ditches by means of which the water was artificially drained from the pool and conducted upon the plaintiff's land, to his damage. There was no concerted plan between these men who dug the several ditches. Each one acted upon his own initiative independently of the others. They did not co-operate in the construction or operation of any of these ditches. No two of them joined in the digging or use of any one of them. The Supreme Court quite properly said: "An action at law cannot be maintained against several defendants jointly, when each acted independently of the others, and there was no concert or unity of design between them."

Exactly the same situation existed in the Slater case, *supra*. In the present case, there was concerted action and co-operation between the defendants in maintaining a water canal for the joint benefit of both parties. This constituted them joint tort-feasors with respect to all the damage which resulted therefrom. We are of the opinion that since the defendants were joint tort-feasors with respect to the operation of the canal from which substantially all the damage came, it would not invalidate the joint judgment

merely because one of the joint-feasors also independently maintained a reservoir which contributed to a slight extent to the damage which resulted chiefly from their common enterprise.

Finally, the appellants contend the judgment should be reversed for the reason that the court gave to the jury contradictory instructions which are irreconcilable. It is true that contradictory instructions were given to the jury regarding the basis upon which damages must be predicated. Certain instructions informed the jury that a verdict for damages could not be rendered against the defendants unless the evidence disclosed the fact that such damages were the result of negligence in the construction or operation of the reservoir or canal. Other instructions informed the jury that damages might result as a violation of article I, section 14, of the Constitution of California, by merely injuring the property of the plaintiffs from seepage of water from the canal, even in the absence of negligence in the construction or maintenance of the reservoir or canal. In accordance with the law as we have heretofore stated the rule, the instructions are erroneous which informed the jury that a verdict could not be rendered against the defendants in the absence of evidence of negligence in constructing or maintaining the reservoir or canal. These erroneous instructions are all favorable to the appellants. We assume they were all offered by the defendants. Since the record on appeal fails to indicate which party offered these instructions, in support of the judgment it will be presumed they were offered by the appellants. (*Knight* v. *Gosselin*, 124 Cal. App. 290, 297 [12 Pac. (2d) 454]; 2 Cal. Jur. 870, sec. 509; *Gray* v. *Eschen*, 125 Cal. 1 [57 Pac. 664].) The appellants may not complain of erroneous instructions which were given to the jury at their own request since the jury was elsewhere correctly instructed with respect to the same subject. Under such circumstances it may not be assumed these instructions were prejudicial to them. (*Treadwell* v. *Nickel*, 194 Cal. 243, 271 [228 Pac. 25, 37]; *Barkhaus* v. *Producers Fruit Co.*, 192 Cal. 200, 210 [219 Pac. 435].) In the Treadwell case, *supra*, it is said in that regard: "The giving of conflicting instructions upon a material point is undoubtedly error, but a party may not be heard to complain that in-

structions are inconsistent, if it appear that the inconsistency arises through the giving of instructions at his request which are inconsistent with, or contradictory of other instructions given at the request of the other party which are pertinent to the issues of the case, and which are correct statements of the law.''

We find no reversible error in the giving of the instructions.

The judgment is affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 4, 1934.