[Civ. No. 7403. Third Dist. Oct. 27, 1947.]

MADISON L. WILLIAMS et al., Appellants, v. SUTTER-BUTTE CANAL COMPANY (a Corporation), Respondent.

Manwell & Manwell for Appellants.

Seth Millington for Respondent.

ADAMS, P. J.—Plaintiffs brought this action seeking damages for injuries to their land claimed to have been caused by the negligence of defendant in the construction and operation of its canal along the west side of plaintiffs' land, and also prayed for an injunction prohibiting defendant from further diverting water into the canal.

Defendant is a public utility engaged in the business of selling water for irrigation.

The allegations of count one of plaintiffs' complaint regarding negligence are as follows:

"That in that portion of said main canal which lies adjacent to the lands of plaintiffs said defendant maintains, and during all of the times herein mentioned, a head gate for purpose of regulating the heights and volume of water in said main canal.

"That, heretofore, within two years last past, to-wit: During the irrigation season of the years 1944 and 1945, the said defendant so wilfully, unlawfully and negligently constructed its said canal, and the said defendant so wilfully, unlawfully and negligently maintained and controlled its said canal and the water flowing therein, and the said defendant so wilfully, unlawfully, and negligently so regulated said head gate so as to cause the water in said canal to stand, raise and be above the level at which said canal was designed and constructed to carry water, for a long length of time, that the waters from said canal seeped and percolated through and under the banks thereof and into and upon the lands of these plaintiffs and injured and damaged plaintiffs' land and the fruit trees and vines grown thereon to the damage of plaintiffs and of said land in the sum of Fifteen Thousand ($15,000.00) Dollars."

In their second count they alleged:

"That heretofore during the irrigation seasons of the years 1944 and 1945 defendant diverted a large stream of water into the said canal and by a regulation of the defendant's head gate herein causes the water to stand, raise and be above the level at which said canal was designed and constructed to carry water for a long length of time. . . .

"That the water thus diverted into said canal by said defendant escapes therefrom on lands owned by the plaintiffs by rea-

son of the loose character of the soil lying beneath the same and that the said water percolates through the soil under and about said canal and over and upon and through the lands of plaintiffs so as to kill plaintiffs' fruit trees and further so as to fill or flood plaintiffs' cellar to such an extent that plaintiffs must maintain a pump therein to keep the water from said cellar.''

The evidence shows that on November 4, 1920, while one Clive B. Kelly and his wife, Mary Kelly, were owners of the land now owned by plaintiffs and that occupied by the canal of defendants, they executed deeds conveying to defendants in fee a strip of land 70 feet in width along the west line of their said land. The deeds also granted to the grantee, and to its successors and assigns, the right of ingress and egress to and from the land conveyed over the adjoining lands of the grantors for the purpose of constructing, maintaining, repairing, enlarging, using and operating on the land thereby conveyed, an earthen canal or ditch, and other works and facilities for the flowing and conveyance of water therein for irrigation purposes, in a usual and customary manner, said right of ingress and egress to be exercised with due regard for the rights of the grantors. The grantors expressly declared and agreed that the covenants made by them with said grantee were made for the benefit of the above-described land granted to the grantee, and were made for the assigns and the successors in interest of the grantors and to the assigns and successors in interest of the grantors and to the assigns and successors in interest of the grantee, and should run with said adjoining lands owned by the grantors. The canal in question was constructed in 1921, and has been in operation ever since. In December, 1942, plaintiff, through mesne conveyances, acquired the remainder of the Kelly land.

The action was brought to trial before a jury. In an opening statement counsel for plaintiffs stated in effect that he would rely alone upon the construction and operation of the head gate constructed in 1943 as the cause of seepage onto plaintiffs' lands, which seepage caused the damage of which they complained. At the conclusion of plaintiffs' presentation of evidence the trial court granted a motion for a nonsuit, saying that the plaintiffs had failed to meet the burden of proof cast upon them to show negligence. Judgment was entered in favor of defendant, and from that judgment this appeal was taken.

 It seems to be conceded by both parties that the general rule applicable to the case is that set forth in *Sternes* v.

*Sutter-Butte Canal Co.*, 61 Cal.App. 737, 743 [216 P. 66], and approved in *Groff* v. *Reclamation District No. 108,* and consolidated cases, 97 Cal.App. 22, 24 [274 P. 993], to wit, that whenever a grant of a right of way is executed by a landowner he thereby estops himself from afterward prosecuting any action for the past, present, or future damages that may have occurred, or may reasonably be expected to occur, by reason of the necessary, natural, and ordinary use of the utility or public service for which the right of way is granted; and this includes the natural, reasonably to be anticipated, and ordinary injury resulting to adjacent land from seepage, if the land is of a character that admits of or may be reasonably expected to admit of such action of the waters taking place. Also see *Sutro Heights Land Co.* v. *Merced Irr. Dist.*, 211 Cal. 670, 692-693 [296 P. 1088] ; *Edmonds* v. *Glenn-Colusa Irr. Dist.*, 217 Cal. 436, 442-443 [19 P.2d 502] ; *Hume* v. *Fresno Irr. Dist.*, 21 Cal.App.2d 348, 351 [69 P.2d 483] ; *Ketcham* v. *Modesto Irr. Dist.*, 135 Cal.App. 180, 188-189 [26 P.2d 876].

Appellants recognize the foregoing rule, but urge that, nevertheless, damages are recoverable where they are caused unnecessarily by negligent or improper maintenance of or construction of a canal, citing *Edmonds* v. *Glenn-Colusa Irr. Dist., supra,* at page 444, and *Hume* v. *Fresno Irr. Dist., supra;* and they urge that the evidence introduced by them raised an issue as to whether or not defendant had been negligent under the circumstances of the case; and that this issue should have been submitted to the jury.

A summary of the evidence upon which they rely, as set forth in their own brief, is as follows: Plaintiff Madison Williams testified that he acquired his property in 1942 from the Federal Land Bank; that in addition to a house and barn, there were approximately eight acres of prunes, twelve acres of peaches and some wheat; that the eight acres of prunes and a portion of the peach orchard lay adjacent to the canal; that in the year 1943, the plaintiff obtained a crop of peaches from his peach trees, but has had no crop since that date, and that his prune crop in 1943 was much larger than he had since been able to harvest; that he lost no trees in 1943, and he noticed no water in his orchard in 1943; that he observed the banks of the canal throughout the summer of 1943 and saw nothing wrong; that there was a cellar under his house and that he noticed no water in his basement in 1943; that

in 1944 the defendant constructed a new weir south of the bridge, which bridge crosses the canal on Franklin Road, the county road which runs along the south side of plaintiffs' land; that thereafter the water in the canal would get as high as 16 to 22 inches above the floor of the roadbed on Franklin Road; that there was water in the canal from about March or April of each year until October or November; that water backed up down the road for one hundred feet until the defendant constructed a sump along the canal; that in 1944 plaintiff noticed three feet of water in his basement or cellar; that thereafter he bored test holes at various places on his property and kept measurements of the water level, and that the water level in these holes varied from 6 inches to 2½ feet from the surface; that in 1944, the ground became so boggy and soft that tractors and even horses bogged down; that the condition recurred in 1945; that in 1944, the water level in the canal was higher and that in 1944, he observed water seeping through the banks; that about June of 1944, defendants constructed a sump ditch along the east side of the canal bank, and installed a pump in an effort to remove the seepage, but that the situation was not relieved; that he once found water was seeping through the levee through gopher holes, and over the grass roots and stumps; that he complained to the defendant and that thereafter it lined the inside of the canal bank with red clay without effect; that substantially the same condition existed in 1945 and 1946.

Plaintiffs called an engineer, Edward Von Geldern, and introduced a map of plaintiffs' lands and the canal, and a scale graph or profile showing the water level under plaintiffs' property. This witness also testified that the water on plaintiffs' property came directly from the canal; that he found that the main canal is dug below the hardpan and permits water to escape under the hardpan.

Respondent points out in its brief the following testimony, also adduced by plaintiffs: That Williams testified that the only water that came from the canal was seepage; that a trickle came out at one place approximately double the amount of a garden hose, at a point north of the old weir; that there was one other place where seepage occurred which was between the old weir and the road; that amount he estimated at about the amount of a garden hose; that plaintiff made no claim, nor did he ever testify that any water came out of gopher holes, squirrel holes, or any of the things that could have been prevented; that under cross-examination he

definitely limited the source of water and the method by which it escaped the bank to these two seepage spots; that he made no claim nor did any witness give any testimony that shows anything in the operation of the canal that was negligent in any particular; that plaintiff's witness, Elmer C. Smith, testified that there were no holes in the levee, no water was gushing out, no water was topping the levee, and that there were no squirrel or gopher holes where water was running out; that from a construction angle the canal was in good shape; that that type of soil will seep.

Also, that plaintiff's witness, W. J. Vanderburg, testified that at a point about 500 feet north of the road along the bank for 200 or 300 feet the levee was wet, but there was no water that could be measured; that there was just a wet bank, and no place where water was gushing out of the bank through a squirrel or gopher hole; that the soil was porous and seeps; that no witness testified to anything else regarding the seepage; that the facts before the court show that the canal was built in a soil that was porous; that it was well constructed; that no water escaped from any controllable source, and the strongest testimony as to the amount was furnished by the plaintiff himself—namely, at one point, approximately double the volume of a garden hose and at the other point approximately the volume of a garden hose; that the other witnesses who testified to the amount merely stated that there was a wet bank and no measurable amount of seepage; that not one witness testified that the construction of the weir south of plaintiffs' lands is not in complete harmony with the best irrigation practices; that the evidence developed the fact that there was a weir a couple of hundred feet north of the Franklin Road and at a point where the ditch joins on the lands of the plaintiffs, which weir had been there for many years; that the testimony also shows that prior to 1944, the plaintiffs took their water for the irrigation of their lands from a headgate a short distance north of the old weir, but that in 1944, they changed the diversion point to a place well up toward the north end of their lands which point was higher than the old diversion point, and that at their request water was furnished at the new diversion point which necessitated the raising of the water level in the canal north of the old weir; that plaintiff Williams testified that one year, which, of course, would have been 1943, he took the water out of the canal for his irrigation north of an old weir which was situated north of the county road, but that at his request the

intake was changed to where it is today, and the change was made because he wanted it.

Appellants filed no reply brief, did not argue the case, and do not deny the existence of the testimony referred to by respondent.

From the foregoing evidence and in view of the rules of law laid down in the cases above cited, can it be said that the trial court erred in granting defendant's motion for a nonsuit? Obviously, the only water from the canal which penetrated plaintiffs' land, except such as they diverted themselves for irrigation purposes, was the result of seepage through a soil that is admittedly a type of soil that will seep. There is no evidence that the canal itself was not properly constructed, maintained or operated. There is no evidence that any changes were made in same after plaintiffs acquired their land in December, 1942, except the construction of the weir south of the county road below plaintiffs' land; and there is no evidence that said weir was improperly constructed or operated. Plaintiffs' witness Smith testified that in August, 1945, there were no holes in the levee, that the water in the canal was not topping the levee, that there were no squirrel or gopher holes, and that aside from a few places where he could see seepage, there was no place that water was coming from the canal; that the canal was well constructed and there was nothing unusual about its operation.

Aside from the testimony of Williams that he did not suffer any damage in 1943, there is no evidence that there had not been seepage in prior years, after the canal was constructed in 1921. And Williams testified that shortly after he bought the place he pulled out about four and one half acres of peaches because the trees were not productive and weeds and grass "were in there." And as for the boggy condition of plaintiffs' land, one of their witnesses testified that in January or February, 1945, he tried to spray some of the orchard when there was no water in the canal, but found it too boggy to operate his equipment. Also, as contradicting allegations of negligence on defendant's part, the testimony shows that it endeavored to protect plaintiffs against seepage by digging a sump ditch, installing a pump and lining the inside of the canal on the side next to plaintiffs' land.

As hereinabove stated, appellants rely upon certain language used in *Edmonds* v. *Glenn-Colusa Irr. Dist., supra,* at page 444, to the effect that in cases similar to this, damages are recoverable where they are caused unnecessarily by negli-

gent or improper maintenance or construction of a canal. But in that case the court, in reversing a judgment against the defendant, said, at page 442: ''The record does not contain any evidence as to any structural changes made in the canal since its construction, or as to any structural defects. The canal or ditch is maintained and operated as are other irrigation ditches of a similar character, and no specific act or acts of negligent operation have been pointed out. The most that was shown is that the water in the canal was occasionally raised in order to conduct water to farm lands by laterals to a height of some 12 or 14 inches above its height in 1925, at which time some ten and one half acres of plaintiff's lands along or near the canal became permeated with waters which the trial court, in view of the issues presented, undoubtedly found in the condemnation proceeding, was seepage from said canal.'' Also, at page 443, it said: ''The checking of the canal at certain places to raise the water level for the purpose of irrigating farm lands does not seem, under the circumstances, to have been an unreasonable use of the canal, but an incident to its use. If seepage was more likely to occur under the conditions, it would not seem that any particular adjacent owner of land would have the right to demand that the checking be done at such points as would divert seepage waters from her lands to the lands of another, especially in a case, as here, where plaintiff has had her day in court as to the damage she would sustain by reason of seepage waters.''

*Hume* v. *Fresno Irr. Dist., supra,* is also relied upon by appellants; but in that case, while a judgment for plaintiffs was affirmed, the court pointed out in support thereof that there was evidence in the case that there had been recent changes in the canal itself just prior to the time that plaintiffs suffered damage to their crops, in that the bed of said canal where it adjoined plaintiffs' land had been lowered to a depth varying from 4 inches to 18 inches along the entire section, and that this increased the seepage because the deeper the water in the canal, the greater the pressure and the greater the seepage.

No such situation exists in the case before us. No changes were made in the canal, and, as above stated, plaintiffs' own witness testified that it was operated in the usual way; and there is no evidence to the contrary. Furthermore, as before stated, the two deeds by which respondent acquired the right

of way for the canal in 1920 from appellants' predecessor in interest, specifically provided that the grant was "for the purpose of constructing, maintaining, repairing, enlarging, using and operating on the land hereby conveyed, an *earthen* canal or ditch, *and other works and facilities* for the flowing and conveyance of water therein for irrigation purposes, *in a usual and customary manner* . . . ," and that "grantors expressly declare and agree that the covenants herein made by them with said grantee are made *for the benefit of the above described land granted to the grantee,* and are made *for the assigns and the successors in interest of the grantors* . . . *and shall run with said adjoining lands* owned by the grantors." (Italics added.) In the light of the above covenants contained in the deeds by which respondent acquired the right of way for the canal, under the conceded rule stated in the cases first herein cited appellants did not prove a case against respondent. No negligence on its part was shown, and while plaintiffs may have suffered injury by reason of the natural seepage from the canal, respondent is not liable therefor.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.