[Civ. No. 6016. Fifth Dist. July 13, 1983.]

E. E. HAGEMANN, SR. et al., Plaintiffs and Appellants, v.
WEST STANISLAUS IRRIGATION DISTRICT,
Defendant and Appellant.

**COUNSEL**

Martin, Crabtree, Schmidt & Zeff and Walter J. Schmidt for Plaintiffs and Appellants.

Pillsbury, Madison & Sutro, Robert M. Westberg, James J. Walsh, Donald J. Putterman-Crigger and Warren F. Gant, for Defendant and Appellant.

Downey, Brand, Seymour & Rohwer and James M. Day, Jr., as Amici Curiae on behalf of Defendant and Appellant.

OPINION

**WOOLPERT, J.**—On this appeal we decide whether Water Code section 22098 obligates an irrigation district to provide or contribute toward drainage for the benefit of land outside the district to alleviate damage caused by irrigation conducted on land within the district. We begin this opinion with an oversimplification of facts bearing on this issue.

Plaintiffs' farm is reclaimed land bordering a river. Water originating from irrigation of nearby privately owned land flows underground toward the river, raising the water table and adversely affecting plaintiffs' farm. The defendant irrigation district (District) supplies the offending water to the landowners in the district. Plaintiffs are not district taxpayers, as their land is outside the district boundaries.

Plaintiffs sought and obtained a declaratory judgment that District has a duty to protect plaintiffs' land from irrigation water flowing underground toward the river beyond the district boundaries and that District may satisfy that duty by paying 15 percent of the costs of draining plaintiffs' land. District appeals from that portion of the judgment.

We are not dealing with ordinary principles of law applicable to the relationship of adjacent landowners, such as inverse condemnation. The trial court found the necessary duty in its interpretation of Water Code section 22098.[1]  Because we disagree and find no such duty imposed by section 22098, we will reverse the judgment in part.

Section 22098 provides as follows: "Whenever it appears necessary to drain any land within a district on account of the irrigation which has been

---

[1]All further statutory references are to the Water Code.

done or which is intended to be done by the district under laws relating to it, whether for the purpose of more beneficially carrying on the irrigation or to protect the district from liability by reason of the irrigation, its board, if it is reasonable from an economic standpoint that the drainage be provided, shall provide for the drainage." (Added Stats. 1943, ch. 372, p. 1897.)

■ It is an established principle that "if statutory language is 'clear and unambiguous there is no need for construction, and courts should not indulge in it.'" (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218 [188 Cal.Rptr. 115, 655 P.2d 317], quoting *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

■ Because plaintiffs' land lies outside the district boundaries, it appears that section 22098 does not support a declaration that the defendant District is duty bound to provide drainage for their land. However, the trial court found that District was obligated to drain its own land to avoid liability under section 22098, and that because such a requirement might not be economically reasonable, District could discharge its duty by paying part of the cost of draining plaintiffs' land. We will examine the facts of this case and divide section 22098 into its significant parts.

*It must appear necessary.* There is ample evidence of the necessity, assuming the trial court could make that determination absent District action. (*Sutro Heights Land Co.* v. *Merced Irr. Dist.* (1931) 211 Cal. 670, 700 [296 P. 1088].)

*To drain land within a district.* The District supplies water to its taxpayers for beneficial uses (§ 22075) and provides drainage made necessary by irrigation within the district (§§ 22095-22099). Subject to economic realities and a showing that the District is not doing "all within its power" to provide drainage, a district landowner may, by court mandate, compel the District to provide drainage. (*Sutro, supra,* 211 Cal. 670, 700.) At the time of the *Sutro* decision, the statute upon which section 22098 is based did not contain the "within a district" language. Even so, the court carefully limited its discussion to district landowners. In finding the statute created a duty, it commented: "Whether in a particular case a *landowner in the district* can invoke the aid of the court to compel the district to perform the duty imposed upon it by the statute would depend upon the facts of that particular case." (*Ibid.,* italics added.) We will return to the right of an outside landowner to bring such an action when we discuss the reference to liability in section 22098.

*On account of the irrigation.* The court had sufficient evidence to find that 15 percent of the drainage problem was caused by District-supplied water.

*Done or to be done by the District.* Here the water was supplied by District; the manner in which it was used varied according to the irrigation needs and decisions of the individual owners. Only in the broadest sense of the word has District "done" any irrigation. Section 22098 merely permits the District to provide drainage for conditions made possible by the water which it supplies. We have not been cited any cases holding an irrigation district responsible for the acts of its users when the District does no more than supply water. To the contrary, it appears there is no liability under present law absent evidence of the District's direct participation in the actual discharge of the water or a failure to construct or maintain its distribution systems to avoid water loss, such as seepage from a district canal. (*Sutro Heights Land Co.* v. *Merced Irr. Dist., supra,* 211 Cal. 670.)

In *Sutro,* a private landowner sought several forms of relief, including damages for past acts and an injunction ordering the irrigation district to install drainage works which would avoid future damage. The trial court found insufficient evidence to hold the district liable for an increasingly high water plane. The appellate court affirmed this finding, citing other reasons for the rising water plane which could not be blamed on the water supplier. These were: (1) the fact that plaintiffs' lands were "located in practically the lowest part of the district and necessarily they would receive an increased amount of underground water as irrigation was extended to the lands in other parts of the district," (2) the water users, including the plaintiffs, had used the water carelessly, and (3) plaintiffs had installed an artesian well on their own property. (*Id.,* at pp. 697-699.)

*In order to improve the irrigation efforts or to protect the district from liability because of the irrigation.* This portion of the statute is similar to its predecessor which was before the *Sutro* court. (*Id.,* at p. 700.) In that case the court did not discuss the implications of the language which then read: "or to protect such districts from liability by reason of such irrigation. . . ." Here, however, plaintiffs urge statutory liability under sections 22095 and 22255.[2]

---

[2]Section 22095: "A district may provide for any and all drainage made necessary by the irrigation provided for by the district."

Section 22255: "When its board deems it in the best interests of the district, the district may regulate the amount of water to be used to irrigate crops within the district when seepage from the irrigation would damage adjacent land inside or outside of the district or may require as a condition precedent to the delivery of water the construction of adequate

Neither section supports plaintiffs' case. Section 22095 is permissive, as is section 22255, which, although referring to seepage-caused damage to land outside the district, merely authorizes the district to set reasonable conditions to the use of the water it supplies. Absent a clear legislative mandate that the authority granted the district imposes liability on the district for the misuse of the water supplied its users, we will not search our imaginations to find something overlooked by the *Sutro* court. In *Sutro* it is at least implied that the benefits of extending irrigation to otherwise dry land may burden lowlands in the area without legal fault. (*Sutro, supra,* at p. 698.) If the Legislature intended to make an irrigation district responsible for the negligence of its users, such language easily could have been included.

The trial court found section 22098 would support an order which indirectly requires the irrigation district to pay for drainage outside the district. Using a cause and effect approach, it was thought logical to conclude that (1) since water moving underground from the district boundaries has its source within the district and can be stopped by drainage of at least part of the *district land* through which it flows, and (2) if, as the court concluded, it would be economically unreasonable to try to stop the water before it leaves district land, (3) a simple solution would be to compel the District to pay its share of the drainage cost when the water reaches the outside land. This rather attractive solution overlooks the seriousness of imposing liability without proof of legal fault. Also, it brings us to the last clause of section 22098 which goes to the heart of District's existence.

*The board shall, if reasonable from an economic standpoint, provide for the drainage.* The *Sutro* court found the statute gave an irrigation district "power and authority," and also a "duty" to its landowners, to provide drainage necessitated by its operations. (*Id.,* at p. 700.) However, considerable emphasis was placed on equal treatment of district taxpayers and on the District's limited financial resources. All that can be required of a district is a reasonable effort with "the money available for that purpose." (*Id.,* at p. 704.) The court was expressly concerned that liability not be imposed which would "bring financial ruin upon the district and irreparable injury to the landowners in the district." (*Id.,* at p. 703.) A similar concern

---

drainage facilities to prevent damage to the adjacent land. Whenever the board finds, with respect to land for which there is no existing system for the application of water for the irrigation thereof, that the character of the soil or elevation of the land to be supplied water from the district water supply is such that the application of such water thereto by flooding is likely to require the use of excess quantities of water or to create a hazardous seepage or drainage problem, the board may limit the application of such water to that land to application through overhead sprinkling systems so designed and operated to prevent the use of excess quantities of water, or the creation of a hazardous seepage or drainage problem."

dictates that District be given the first opportunity to judge its financial limitations and not be held responsible for novel water supplier duties unexpressed in either statutory or case law.

Cases imposing liability on an irrigation district primarily involve instances where seepage from the district's canals results in damage to adjacent land because of negligent construction or maintenance of a canal, or a taking of property under article I, section 19, of the California Constitution. (See, e.g., *Curci* v. *Palo Verde Irr. Dist.* (1945) 69 Cal.App.2d 583 [159 P.2d 674]; *Hume* v. *Fresno Irr. Dist.* (1937) 21 Cal.App.2d 348 [69 P.2d 483]; *Ketcham* v. *Modesto Irr. Dist.* (1933) 135 Cal.App. 180 [26 P.2d 876].)

■ Also, absent a statutory ground for relief against a district, an aggrieved landowner may sue a property owner who irrigates to such an extent that water percolates onto and damages his land. (*Fredericks* v. *Fredericks* (1951) 108 Cal.App.2d 242, 244 [238 P.2d 643]; *Kall* v. *Carruthers* (1922) 59 Cal.App. 555, 563 [211 P. 43].)

Since there is no authority for imposing the duty declared by the trial court, we need not examine the effect which changing economic conditions could have on the manner in which the court has suggested the duty be discharged. Nor do we review the propriety of an order making the discharge of the duty permissive but not declaring the rights of the parties should there be a default in payment.

In our introduction we omitted additional facts pertinent to plaintiffs' separate appeal from the judgment. By a written agreement made in 1928 and modified in 1939, and another agreement made in 1947, District obtained an easement for the construction and maintenance of a canal across the border of plaintiffs' land. In exchange for the right to use plaintiffs' property to convey water to the river, District agreed to install ditches, pumps and other facilities, and to make certain payments.

Plaintiffs look to these written agreements and certain conduct of District over the years to find a contractual obligation to provide more extensive drainage than that arising under section 22098. However, the trial court found the 1947 agreement had been terminated according to its terms and that District had fully performed its obligations under the earlier agreements. Substantial evidence supports these conclusions.

The judgment as stated in paragraphs 1, 2 and 3, quoted in footnote 3, is affirmed; the judgment as stated in paragraphs 5, 6, 7 and 8 (fn. 3) is reversed.[3] District to recover costs.

Franson, Acting P. J., and Hanson (P. D.), concurred.

---

[3]The relevant portions of the judgment·read as follows:

"1. The 1928 and 1939 agreements are valid and existing agreements which require the District to protect the Hagemann property and the lands within White Lake against seepage from the main canal; to construct seepage ditches and construct and install, maintain and operate drainage pumps so as to maintain the water level and seepage from the main canal at a level of 22 U.S.E.D. and at least eight feet below the natural average ground level.

"2. The District has at all times performed its obligations under the 1928 and 1939 agreements.

"3. The District and White Lake are not presently bound by the provisions of the 1947 agreement, which was validly terminated as to all parties in accordance ·with provisions therein.

". . . . . . . . . . . . . . . . .

"5. The District is subject to the provisions of § 22098 of the Water Code of the State of California.

"6. Since damage would, if no corrective measures were undertaken, adversely [a]ffect plaintiffs' reasonable right to use their property, the District has the obligation to see that its drainage water continues on to the San Joaquin River.

"7. Though a drainage system on District's property might not be economically reasonable to protect the District from liability for underground drainage to the low lands (Hagemann property), a contribution of fifteen (15) percent of the cost of providing drainage to the Hagemann property would be economically reasonable for the District.

"8. The District is obligated pursuant to Water Code § 22098 to provide drainage of irrigation water from its District so as not to reasonably interfere with plaintiffs' reasonable use of the Hagemann property. This obligation may be discharged by defendant District paying its prorata share of the cost of draining and pumping the underground drainage water on the Hagemann property which amounts to fifteen (15) percent as a yearly average. . . ."